# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

MCGRIFF INSURANCE SERVICES, INC.
f/k/a BB&T INSURANCE SERVICES, INC.,

      Plaintiff,

v.

EUGENE LITTLESTONE, CALEB
LITTLESTONE, DAWN DISCH, DOUGLAS
FIELDS, MICHAEL FIELDS, and ALLIANT
INSURANCE SERVICES, INC.,

      Defendants.

_____/

CASE NO.: 2:21-cv-480-SPC-NPM

## SECOND AMENDED COMPLAINT

Pursuant to this Court's Opinion and Order [Doc. 51] and written consent of

the Defendants under Rule 15(a)(2) of the Federal Rules of Civil Procedure,

Plaintiff, McGriff Insurance Services, Inc., formerly known as BB&T Insurance

Services, Inc. ("McGriff"), through counsel, files its Second Amended Complaint

in this action and states as follows:

## NATURE OF THE CASE

1.    This is a case for damages arising from the Defendants' blatant

solicitation of employees and customers in violation of several employment

agreements, breach of fiduciary duties owed to Plaintiff while employed, and theft

of Plaintiff's trade secret information through which it provides insurance and

1

7698703v.1

benefits services to clients in Florida and elsewhere. The mass departure from McGriff and theft of information was orchestrated by Defendants Eugene Littlestone ("Littlestone"), Caleb Littlestone, ("C. Littlestone"), Dawn Disch ("Disch"), Douglas Fields ("D. Fields") and Michael Fields ("M. Fields") former McGriff employees who obtained valuable protected information from McGriff through improper means in violation of the federal Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 ("DTSA"), the Florida Uniform Trade Secret Act, Fla. Stat. §§ 688.001, et seq. ("FUTSA"), and in breach of certain restrictive covenants they entered into in connection with their employment with McGriff.

2.      Littlestone, Disch, D. Fields, and M. Fields have all violated the nonsolicitation and confidentiality provisions of their employment agreements. Littlestone and Disch have been aided in violating their agreements by Littlestone's son, C. Littlestone.

3.      Specifically, Littlestone, Disch, M. Fields, and D. Fields have all violated enforceable nonsolicitation provisions in their respective employment agreements by soliciting customers and employees to join them at Alliant. The Defendants' efforts in this regard have caused a mass exit from several of McGriff's Florida offices, including the loss of in excess of twelve (12) employees. Additionally, several of McGriff's customers have started to transition to Alliant.

2

As of the filing of this Second Amended Complaint, the loss of employees and customers continues to mount by the day.

4.      Defendant Alliant Insurance Services, Inc. ("Alliant") now employs Littlestone, C. Littlestone, Disch, M. Fields, and D. Fields immediately following their resignation from McGriff and had encouraged and assisted the Defendants in violating their agreements.   Additionally, Alliant also now employs nearly the entire service teams that worked with Littlestone, M. Fields, and D. Fields while they were employed with McGriff.

5.      In addition to a massive taking of McGriff's customers and employees, Alliant has received McGriff's protected trade secrets from the Defendants and has used and will continue to use those trade secrets to gain a competitive advantage over McGriff, in violation of the DTSA and the FUTSA. Alliant's actions also constitute tortious interference with the business relationship between McGriff and the former employees, in violation of Florida law.

## **PARTIES, JURISDICTION, AND VENUE**

6.      The amount in controversy exceeds $75,000, exclusive of interest, court costs, and attorneys' fees.  As outlined below, this Court has jurisdiction over this matter by way of both federal question and diversity of citizenship.

7.      McGriff is a North Carolina corporation authorized to do business in the state of Florida and a principal place of business in Raleigh, North Carolina.

3

McGriff was formerly known as BB&T Insurance Services, Inc. and continues as the same legal entity.  McGriff conducts business in the retail insurance industry throughout the United States.

8.     Littlestone is an individual residing in Lee County, Florida and working in Lee County, Florida.  Littlestone held the elected position of Senior Vice President with McGriff.  Upon information and belief, Littlestone is domiciled within the State of Florida.

9.     C. Littlestone is an individual residing in Lee County, Florida and working in Lee County, Florida.  Upon information and belief, C. Littlestone is domiciled within the State of Florida.

10.     Disch is an individual residing in Lee County, Florida and working in Lee County, Florida.  Upon information and belief, Disch is domiciled within the State of Florida.

11.     D. Fields is an individual residing in Broward County, Florida and working in Broward County, Florida.  D. Fields held the elected position of Senior Vice President with McGriff.  Upon information and belief, D. Fields is domiciled within the State of Florida.

12.     M. Fields is an individual residing in Broward County, Florida and working in Broward County, Florida.  Upon information and belief, M. Fields is domiciled within the State of Florida.

4

13.     Alliant is a California corporation with its principal place of business in Newport Beach, California.  Alliant is authorized to do business within the state of Florida and is currently doing business in Lee County, Florida.

14.     Pursuant to 28 U.S.C. §1332, this Court has diversity jurisdiction to hear this case.

15.     Additionally, this Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 under a misappropriation of trade secrets claim brought under the federal Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(c).  The Court has supplemental jurisdiction over claims arising under state law pursuant to 28 U.S.C. § 1367.

16.     Venue is proper in this Court pursuant to 28 U.S.C. §1392 and 28 U.S.C. §89 because Littlestone, C. Littlestone, and Disch all reside in Lee County, Florida.

17.     McGriff has satisfied all conditions precedent to the maintenance of this action.

## FACTUAL BACKGROUND

### A. Gino Littlestone's and Dawn Disch's Employment Agreements and Unlawful Solicitation of McGriff's Employees and Customers

18.     Littlestone began his employment with McGriff in November of 2009. At the time of his initial employment, and for most of the duration of his

5

employment, McGriff was known as BB&T Insurance Services until the name changed in 2018.  During his 11 year tenure with the company, Littlestone worked as an insurance agent.  In his position, Littlestone was responsible for driving new business revenue growth by identifying and attracting new clients. Littlestone was further responsible for building and maintaining relationships with McGriff's clients by working with them on an ongoing basis, including through the annual renewal process.

19.     On November 2, 2009, Littlestone entered into an Employee Agreement with BB&T Insurance Services, Inc. (the "Littlestone Agreement"). (Exhibit 1).

20.     On January 1, 2011 and January 8, 2018, the Littlestone Agreement was amended with regard to various terms.  (Exhibit 2).  The amendments did not alter the confidentiality or nonsolicitation provisions in Littlestone's original Employment Agreement.

21.     Littlestone's Agreement contains restrictive covenants that preclude him from engaging in certain competitive activity for a period of two years following the conclusion of his employment; soliciting, selling commercial insurance products to and servicing clients and attempting to sell commercial insurance products to prospective clients of McGriff, and soliciting employees of

McGriff.   Specifically, paragraph 8 of the Employment Agreement states as follows:

> <u>Nonsolicitation</u>.  Employee agrees that, unless specifically authorized by BB&T Insurance in writing, Employee will not, during Employee's employment and for a period of two years following the date of termination of Employee's employment with BB&T Insurance (whatever the reason for the end of the employment relationship), directly or indirectly:
>
> (i)     Solicit, recruit, encourage or support any employee of BB&T Insurance who had performed work for BB&T Insurance within the last year of Employee's employment with BB&T Insurance, to leave the employment of BB&T Insurance;
>
> (ii)    Solicit, contact, encourage or support, on Employee's own behalf or on behalf of any business in competition with BB&T Insurance, any provider of insurance products to BB&T Insurance with which Employee has had material contact within the last year of Employee's employment whether with BB&T Insurance or the Agency to discontinue doing or to reduce the amount of business with BB&T Insurance; or
>
> (iii)   Solicit, contact, divert, or call upon with the intent of doing business with, any "BB&T Insurance Customer" (as defined below) on Employee's own behalf or on behalf of any Competitive Business (as defined below), if the purpose of the activity is to solicit the BB&T Insurance Customer for a Competitive Business (including but not limited to any Competitive Business started by Employee).

22.    Among other provisions, paragraphs 10 and 11 of the Employment Agreement protects confidential information and trade secrets by prohibiting Littlestone from disclosing the confidential information and requiring Littlestone to

7

return all confidential information at the conclusion of his employment.

Specifically, paragraphs 10 and 11 state as follows:

> BB&T Insurance Information.  Employee acknowledges and agrees that all sales files, customer records, customer lists, and reports used, prepared or collected by Employee are the property of BB&T Insurance and agrees that, in the event of the termination of his employment with BB&T Insurance for any reason, he will return and make available to BB&T Insurance prior to the last day of his employment all sales files, customer records, customer lists, reports and all other BB&T Insurance property and materials in his possession.

> Confidentiality. (a) During the term of Employee's employment with BB&T Insurance and for a period of three years following the dates of the voluntary and involuntary termination of Employee's employment with BB&T Insurance, for whatever reason, Employee will not, without prior written approval by BB&T Insurance: (i) misappropriate; (ii) use for the purpose of competing with BB&T Insurance, either directly or indirectly; (iii) disclose to any third party, either directly or indirectly; or (iv) aid anyone else in disclosing to any third party, either directly or indirectly, all or any part of any "Confidential Information" (as defined below) to the extent that such Confidential Information does not rise to the level of a trade secret under applicable law.

> To the extent that the said Confidential Information does rise to the level of a trade secret under applicable law, then, during the term of the Employee's employment with BB&T Insurance and thereafter for as long as said Confidential Information remains a trade secret under applicable law (or for the maximum duration provided under such law), Employee will act in accordance with the terms of applicable law governing trade secrets.

23.     Disch began employment with Oswald, Trippe and Company, Inc. on April 21, 2008. During her employment, Disch executed an Employment Agreement ("Disch Agreement") on July 6, 2008. (Exhibit 3).

24.     On November 2, 2009, Oswald, Trippe and Company, Inc. was acquired, via merger, by OTCI Acquisition, LLC, which in turn merged into BB&T Insurance Services, Inc. that same day. In 2018, BB&T Insurance Services, Inc. changed its name to McGriff Insurance Services, Inc. True and accurate copies of documents from the Florida Department of State and the North Carolina Secretary of State reflecting these transactions are attached. (Exhibit 8).

25.     Similar to the Littlestone Agreement, the Disch Agreement (paragraph 15) contains restrictive covenants that preclude her from engaging in certain competitive activity for a period of two years following the conclusion of her employment; soliciting, selling commercial insurance products to and servicing clients and attempting to sell commercial insurance products to prospective clients of McGriff, and soliciting employees of McGriff.

26.     During their employment with McGriff, Littlestone and Disch came into possession of client lists, contact information regarding clients, insurance data such as renewal dates and coverage, pricing information, financial information regarding clients as it relates to their insurance coverage, clients' insurance needs

and preferences, insurance products and services preferred and used by clients, and other sensitive information (collectively, the "McGriff Trade Secrets").

27.     Shortly after their departure from McGriff, Littlestone and Disch began working with Alliant, one of McGriff's direct competitors.

28.     Littlestone and Disch immediately began soliciting McGriff's customers and other employees to join them at Alliant.  As a result, Littlestone and Disch have successfully recruited nearly their entire team to join them at Alliant.

29.      Additionally, Littlestone and Disch have used McGriff's confidential client information, pricing information, and trade secret information to solicit and convert McGriff's clients to Alliant.  As a result, McGriff has already seen business leave as a result of Littlestone and Disch's solicitation efforts.

30.     C. Littlestone is the son of Littlestone and has also been solicited by Littlestone to join him at Alliant.  C. Littlestone does not have a written employment agreement with McGriff.  For that reason, Littlestone and Disch have used C. Littlestone to indirectly solicit and take customers and employees from McGriff to Alliant. C. Littlestone has knowledge of the valid and enforceable restrictive covenants in both Littlestone's and Disch's agreements.  Despite this knowledge, C. Littlestone has aided Littlestone's and Disch's efforts to recruit McGriff's entire team and customers to join Alliant.

10

31.    In June of 2021, McGriff came into possession of information confirming that its clients have been solicited, directly or indirectly, by Littlestone and Disch.  This solicitation is ongoing and McGriff has suffered extensive loss of customers and revenue as a result.

### B.  D. Fields' and M. Fields' Unlawful Solicitation of McGriff's Employees and Customers

32.    D. Fields began his employment with McGriff in November of 2009. At the time of his initial employment, and for most of the duration of his employment, McGriff was known as BB&T Insurance Services until the name changed in 2018.  During his 11 year tenure with the company, D. Fields worked as an insurance agent.  In his position, D. Fields was responsible for driving new business revenue growth by identifying and attracting new clients. D. Fields was further responsible for building and maintaining relationships with McGriff's clients by working with them on an ongoing basis, including through the annual renewal process.

33.    On November 2, 2009, D. Fields entered into an Employee Agreement with BB&T Insurance Services, Inc. (the "D. Fields Agreement"). (Exhibit 4).

34.    On January 10, 2018, the D. Fields Agreement was amended with regard to various terms.   (Exhibit 5). The amendment did not alter the

11

confidentiality or nonsolicitation provisions in D. Fields' original Employment Agreement.

35.     D. Fields' Agreement contains restrictive covenants that preclude him from engaging in certain competitive activity for a period of two years following the conclusion of his employment; soliciting, selling commercial insurance products to and servicing clients and attempting to sell commercial insurance products to prospective clients of McGriff, and soliciting employees of McGriff. Specifically, paragraph 8 of the Employment Agreement contains the exact language found in the Littlestone Agreement. (*See supra*, paragraph 22).

36.     Additionally, paragraphs 11 and 12 of D. Fields' Agreements are the same provisions found in the Littlestone agreement at paragraphs 10 and 11. (*See supra,* paragraph 23). Specifically, paragraphs 11 and 12 of D. Fields' Agreement prohibits him from disclosing confidential information and requires him to return all confidential information at the conclusion of his employment.

37.     M. Fields began his employment with McGriff in May of 2012.  At the time of his initial employment, and for most of the duration of his employment, McGriff was known as BB&T Insurance Services until the name changed in 2018. During his 9 year tenure with the company, M. Fields worked as an insurance agent.  In his position, M. Fields was responsible for driving new business revenue growth by identifying and attracting new clients.  M. Fields was further responsible

12

for building and maintaining relationships with McGriff's clients by working with them on an ongoing basis, including through the annual renewal process.

38.     On May 21, 2012, M. Fields entered into an Employee Agreement with BB&T Insurance Services, Inc. (the "M. Fields Agreement").  (Exhibit 6).

39.     On January 11, 2018, the M. Fields Agreement was amended with regard to various terms.    (Exhibit 7). The amendment did not alter the confidentiality or nonsolicitation provisions in M. Fields' original Employment Agreement.

40.     M. Fields' Agreement contains restrictive covenants that preclude him from engaging in certain competitive activity for a period of two years following the conclusion of his employment; soliciting, selling commercial insurance products to and servicing clients and attempting to sell commercial insurance products to prospective clients of McGriff, and soliciting employees of McGriff. Specifically, paragraph 8 of the Employment Agreement contains similar language found in the Littlestone and D. Fields Agreements. (*See supra*, paragraphs 22 and 35).

41.     Additionally, paragraphs 10 and 11 of M. Fields' Agreements are similar provisions found in the Littlestone Agreement at paragraphs 10 and 11, and D. Fields Agreement at paragraphs 11 and 12. (*See supra,* paragraphs 23 and 36). Specifically, paragraphs 10 and 11 of M. Fields' Agreement prohibits him from

disclosing confidential information and requires him to return all confidential information at the conclusion of his employment.

42.    During their employment with McGriff, D. Fields and M. Fields came into possession of client lists, contact information regarding clients, insurance data such as renewal dates and coverage, pricing information, financial information regarding clients as it relates to their insurance coverage, clients' insurance needs and preferences, insurance products and services preferred and used by clients, and other sensitive information (collectively, the "McGriff Trade Secrets").

43.    Shortly after their departure from McGriff, D. Fields and M. Fields began working with Alliant, one of McGriff's direct competitors.

44.    D. Fields and M. Fields immediately began soliciting McGriff's customers and other employees to join them at Alliant.

45.    Additionally, D. Fields and M. Fields have used McGriff's confidential client information, pricing information, and trade secret information to solicit and convert McGriff's clients to Alliant.

46.    In June of 2021, McGriff came into possession of information confirming that its clients have been solicited, directly or indirectly, by D. Fields and M. Fields. This solicitation is ongoing and McGriff has suffered extensive loss of customers and revenue as a result.

14

47.     In June of 2021, McGriff has come into possession of text messages between D. Fields and a current McGriff employee attempting to solicit the employee to leave McGriff and join Alliant.

48.     Additionally, in June of 2021, McGriff came into possession of information confirming that D. Fields and M. Fields had disclosed their anticipated departure to McGriff's customers and clients weeks before disclosing the information to McGriff.  This disclosure was made by D. Fields and M. Fields for the purpose of taking business to Alliant and in breach of fiduciary duties owned to McGriff while D. Fields and M. Fields were both employed with the company.

49.     As a result of the Defendants' collective unlawful actions, McGriff has experienced damages in excess of $75,000.  In addition, the Defendants have unjustly enriched themselves at McGriff's expense and McGriff has been forced to incur legal expenses to enforce its rights.

50.     The conversion of McGriff's customers and information remains ongoing, and McGriff continues to experience financial loss as a direct result of the actions of Littlestone, C. Littlestone, Disch, D. Fields, M. Fields, and Alliant.

51.     As a result of Defendants' unlawful actions, McGriff was required to hire legal counsel and is obligated to pay its lawyers a reasonable fee for their services.

15

## COUNT I
## TORTIOUS INTERFERENCE WITH BREACHED
## CONTRACT AGAINST ALLIANT

52.     McGriff realleges and incorporates by reference paragraphs 1 through 51 above as if set forth fully herein.

53.     This is an action against Alliant for damages as a result of its tortious interference with the Littlestone, Disch, D. Fields, and M. Fields Employment Agreements, which contain nonsolicitation and confidentiality provisions that have been breached by Littlestone, Disch, D. Fields, and M. Fields at the direction of and for the benefit of Alliant.

54.     McGriff has established contractual and otherwise advantageous business relationships with its clients, and has taken reasonable and lawful steps to protect those relationships, including but not limited to, requiring certain employees to enter into agreements containing specific nonsolicitation and confidentiality provisions.

55.     Alliant knew or should have known of the Employment Agreements between McGriff, Littlestone, Disch, D. Fields, and M. Fields.   Despite this knowledge, Alliant intentionally and knowingly interfered with McGriff's business and contractual relations with its clients.

56.     Alliant has induced Littlestone, Disch, D. Fields, and M. Fields to breach their Employment Agreements with McGriff by knowingly maintaining the

16

benefit of McGriff's trade secrets and by knowingly facilitating Littlestone, Disch, D. Fields, and M. Fields to steal McGriff's clients and maintain those relationships.

57.    During their employment with Alliant, and in violation of the provisions in their Agreements, Littlestone, Disch, D. Fields, and M. Fields converted customers and information for their new employer, Alliant.    Alliant continues to knowingly possess and use the information, and derive a benefit from the converted customers, thereby continuing to interfere in the relationship.

58.    As a direct and proximate cause of Alliant's actions, McGriff has been harmed, and will continue to be harmed, as a result of Alliant's knowing and intentional tortious interference with the Employment Agreement.

**WHEREFORE**, McGriff respectfully requests that this Court enter judgment against Alliant for its tortious interference with the contractual relationship with Littlestone, Disch, D. Fields, and M. Fields involving the restrictive covenants, for actual and compensatory damages, punitive damages, pre- and post-judgment interest, court costs, attorneys' fees and costs pursuant to applicable law pursuant to the "Wrongful Act Doctrine," and such other and further relief as is just and proper.

## COUNT II
## BREACH OF CONFIDENTIALITY PROVISIONS IN EMPLOYMENT CONTRACT AGAINST LITTLESTONE, DISCH, D. FIELDS, AND M. FIELDS

59.    McGriff realleges and incorporates by references paragraphs 1 through 51 above as if set forth fully herein.

60.    This is an action against Littlestone, Disch, D. Fields, and M. Fields for breach of their Employment Agreements.

61.    Littlestone breached the confidentiality provisions in paragraphs 10 and 11 of the Littlestone Employment Agreement by wrongfully taking, retaining, and utilizing McGriff's confidential client information, pricing information, insurance data, and other trade secrets and using them in connection with his employment with Alliant after their employment with McGriff ceased.

62.    Disch breached the confidentiality provisions in paragraph 15 of the Disch Employment Agreement by wrongfully taking, retaining, and utilizing McGriff's confidential client information, pricing information, insurance data, and other trade secrets and using them in connection with their employment with Alliant after their employment with McGriff ceased.

63.    D. Fields breached the confidentiality provisions in paragraphs 11 and 12 of his Agreement by wrongfully taking, retaining, and utilizing McGriff's confidential client information, pricing information, insurance data, and other trade

18

secrets and using them in connection with his employment with Alliant after their employment with McGriff ceased.

64.     M. Fields breached the confidentiality provisions in paragraphs 10 and 11 of his Agreement by wrongfully taking, retaining, and utilizing McGriff's confidential client information, pricing information, insurance data, and other trade secrets and using them in connection with his employment with Alliant after their employment with McGriff ceased.

65.     As a result of Littlestone, Disch, D. Fields, and M. Fields' breach of their Employment Agreements, McGriff has been damaged.

66.     The Littlestone, Disch, D. Fields, and M. Fields Employment Agreements allows for McGriff to recover its attorneys' fees incurred for bringing this action.

**WHEREFORE**, McGriff respectfully requests that this Court enter judgment against Littlestone, Disch, D. Fields, and M. Fields for: (1) compensatory damages, pre- and post-judgment interest, attorneys' fees and costs; and (2) such other and further relief as may be just and proper.

## COUNT III
### MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836 AGAINST LITTLESTONE, DISCH, D. FIELDS, M. FIELDS, AND ALLIANT

67.     McGriff realleges and incorporates by reference paragraphs 1 through 51 above as if set forth fully herein.

68.     This is an action for an injunction and damages arising under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836.

69.     The McGriff Trade Secrets are subject to reasonable efforts to maintain their secrecy.  They derive independent value from the fact that they are not publicly known or available, and are proprietary to McGriff.

70.     Defendants misappropriated the McGriff Trade Secrets in order to solicit McGriff clients and potential clients.

71.     McGriff revealed the McGriff Trade Secrets to Littlestone, Disch, D. Fields, and M. Fields subject to the restrictions contained in their Employment Agreements and with the expectation and understanding that Littlestone, Disch, D. Fields, and M. Fields would safeguard them and would use them solely to provide services to McGriff's clients and to market McGriff's services to potential clients.

72.     Littlestone, Disch, D. Fields, and M. Fields knew that they were subject to the duty to maintain the secrecy and the limited use of the McGriff Trade Secrets.

20

73.     Littlestone, Disch, D. Fields, and M. Fields misappropriated the McGriff Trade Secrets by retaining them when they left McGriff in order to compete with McGriff for client business and for purposes other than their employment with McGriff.  Upon information and belief, these Defendants took the trade secret information with them when they left.

74.     McGriff has reason to believe that Littlestone, Disch, D. Fields, and M. Fields have disclosed, and likely will continue to disclose, the McGriff Trade Secrets to Alliant in an effort to gain a competitive advantage over McGriff. McGriff also has reason to believe that these Defendants have used, and will continue to use, the McGriff Trade Secrets for Alliant's benefit in an effort to gain a competitive advantage over McGriff.

75.     Alliant acquired and has benefited from the McGriff Trade Secrets through its employees, Littlestone, Disch, D. Fields, and M. Fields, and is using the McGriff Trade Secrets to gain a competitive advantage over McGriff.  Alliant knows or has reason to know that the McGriff Trade Secrets are trade secrets that were acquired by improper means.

76.     For example, Alliant has used the McGriff Trade Secrets to contact McGriff clients, illustrating the fact that Alliant has improperly obtained knowledge of the McGriff Trade Secrets.

77.     Defendants' acts of misappropriation have caused injury to McGriff.

21

78.     The McGriff Trade Secrets are related to products and services used in interstate commerce, as McGriff provides services and products to clients throughout the United States.

79.     To the extent that McGriff can show actual loss and/or unjust enrichment caused by Defendants' misappropriation of the McGriff Trade Secrets, McGriff seeks actual damages and damages for the unjust enrichment.  McGriff is also entitled to exemplary damages under the DTSA for Defendants' willful and malicious misappropriation and use of the McGriff Trade Secrets.

80.     Alliant, Littlestone, Disch, D. Fields, and M. Fields have also misappropriated the McGriff's Trade Secrets in order to convert McGriff's clients.

81.     Alliant, Littlestone, Disch, D. Fields, and M. Fields willfully and maliciously misappropriated the McGriff Trade Secrets in an effort to steal McGriff's clients and convert them to clients of Alliant.

82.     McGriff is entitled to recover its attorneys' fees expended under the DTSA to redress Defendants' willful and malicious misappropriation and use of McGriff's trade secrets.

**WHEREFORE**, McGriff respectfully requests that this Court enter judgment against Alliant, Littlestone, Disch, D. Fields, and M. Fields for: (1) exemplary damages associated with Alliant, Littlestone, Disch, D. Fields, and M. Fields' willful and malicious misappropriation of McGriff's trade secrets; (2)

22

compensatory damages in the form of McGriff's lost profits and/or the amount by which the Defendants have unjustly enriched themselves; (3) attorneys' fees and costs; and (4) such other and further relief as may be just and proper.

**COUNT IV**
**MISAPPROPRIATION OF TRADE SECRETS UNDER**
**FLORIDA STATUTE §688.001 AGAINST LITTLESTONE, DISCH, D.**
**FIELDS, M. FIELDS AND ALLIANT**

83.    McGriff realleges and incorporates by reference paragraphs 1 through 51 above as if set forth fully herein.

84.    This is an action against Alliant, Littlestone, Disch, D. Fields, and M. Fields for misappropriation of the McGriff Trade Secrets.

85.    McGriff's client information, including client contact information, insurance data such as renewal dates and coverage, financial information regarding clients as it relates to insurance coverage, client insurance needs and preferences, insurance products and services preferred and used by clients, and confidential information, constitutes a trade secret under Florida law.

86.    McGriff's sensitive insurance pricing information and other insurance data also constitutes a trade secret under Florida law.

87.    Specifically, McGriff's information is not generally known to third parties and McGriff takes reasonable precautions to maintain the secrecy of this information, such as the agreements filed at DE 1-1, 1-2, 1-3, 1-4, 1-5, 1-6 and 1-7.

23

88.    Alliant, Littlestone, Disch, D. Fields, and M. Fields misappropriated the McGriff Trade Secrets by retaining them when they left McGriff in order to compete with McGriff for client business and for purposes other than their employment with McGriff.  Upon information and belief, these Defendants took the McGriff Trade Secrets when they left McGriff.  McGriff has reason to believe that Littlestone, Disch, D. Fields, and M. Fields have disclosed, and likely will continue to disclose, the McGriff Trade Secrets to Alliant in an effort to gain a competitive advantage over McGriff.  McGriff has reason to believe that these Defendants have used, and will continue to use, the McGriff Trade Secrets for Alliant's benefit in order to gain a competitive advantage over McGriff.

89.    For example, Alliant has used the McGriff Trade Secrets to contact McGriff's clients, illustrating the fact that Alliant has improperly obtained knowledge of the McGriff Trade Secrets.

90.    Alliant, Littlestone, Disch, D. Fields, and M. Fields willfully and maliciously misappropriated the McGriff Trade Secrets in an effort to steal McGriff's clients and convert them to clients of Alliant.

91.    After their employment with McGriff, Littlestone, Disch, D. Fields, and M. Fields used the McGriff Trade Secrets to convert McGriff's clients and the profits associated with said clients for their personal use and use of their new employer, Alliant.

92.     As a result of Alliant, Littlestone, Disch, D. Fields, and M. Fields' willful and malicious misappropriation of the McGriff Trade Secrets, McGriff has been damaged.

**WHEREFORE**, McGriff respectfully requests that this Court enter judgment against Alliant, Littlestone, Disch, D. Fields, and M. Fields for: (1) exemplary damages associated with Alliant, Littlestone, Disch, D. Fields, and M. Fields' willful and malicious misappropriation of McGriff's trade secrets; (2) compensatory damages in the form of McGriff's lost profits and/or the amount by which the Defendants have unjustly enriched themselves; (3) attorneys' fees and costs; and (4) such other and further relief as may be just and proper.

## <u>COUNT V</u>
### TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS AGAINST LITTLESTONE, C. LITTLESTONE, DISCH, D. FIELDS, M. FIELDS, AND ALLIANT

93.     McGriff realleges and incorporates by reference paragraphs 1 through 51 above as if set forth fully herein.

94.     This is an action against Alliant, Littlestone, C. Littlestone, Disch, D. Fields, and M. Fields for tortious interference with advantageous business relationships.

95.     McGriff had an advantageous relationship with its clients.

25

96.     Alliant, Littlestone, C. Littlestone, Disch, D. Fields and M. Fields knew of the advantageous business relationships between McGriff and its clients.

97.     As described above, Alliant (through Littlestone, C. Littlestone, Disch, D. Fields, and M. Fields) and Littlestone, C. Littlestone, Disch, D. Fields, and M. Fields through the use of improper means and McGriff's confidential information, intentionally and unjustifiably interfered with the business relationships between McGriff and its clients.

98.     C. Littlestone, with full knowledge of the contractual obligations at issue, aided and assisted Littlestone and Disch in violating their agreements with McGriff and in securing McGriff's other employees and customers to join Alliant.

99.     As a result of Defendants' tortious interference, McGriff has been damaged.

**WHEREFORE**, McGriff respectfully requests that this Court enter judgment against Alliant, Littlestone, C. Littlestone, Disch, D. Fields and M. Fields for (1) compensatory damages, (2) pre- and post-judgment interest, (3) court costs and (4) such other and further relief as is just and proper.

## COUNT VI
## BREACH OF FIDUCIARY DUTY AGAINST
## EUGENE LITTLESTONE

100.   McGriff realleges and incorporates by reference paragraphs 1 through 51 above as if set forth fully herein.

26

7698703v.1

101.  During his employment with McGriff as a Senior Vice President, Littlestone owed McGriff fiduciary duties to refrain from disclosing McGriff's confidential information, misappropriating McGriff's trade secrets for a competitor's benefit, and soliciting McGriff's customers and employees for a competing business.

102.  Littlestone continues to owe a duty of confidentiality to McGriff to refrain from disclosing McGriff's confidential information or misappropriating its trade secrets.

103.  Littlestone breached his fiduciary duties by failing to inform McGriff that he was performing work on Alliant's behalf while he was still employed by McGriff. This omission directly enabled him to continue to have access to McGriff's confidential trade secrets for several weeks, during which period he took information relating to McGriff's customers for the benefit of himself and/or Alliant, a competitor of McGriff.

104.  Littlestone further breached his fiduciary duties by using McGriff's information to solicit McGriff customers on Alliant's behalf in direct competition with McGriff.

105.  Littlestone also breached his fiduciary duties by recruiting, while still employed by McGriff as a Senior Vice President, several of his subordinates to leave McGriff and join him at Alliant, McGriff's competitor.  As of the filing of

27

this Amended Complaint, McGriff has lost over twenty (20) employees who all resigned without notice and joined Alliant.

106.   As a direct and proximate result of Littlestone's breaches of his fiduciary duties, McGriff has been damaged and Littlestone has gained and benefited and will continue to gain and benefit.

107.   Upon information and belief, Littlestone's acts were fraudulent and malicious. Accordingly, McGriff is entitled to recovery of damages and attorneys' fees.

## COUNT VII
## BREACH OF FIDUCIARY DUTY AGAINST DOUGLAS FIELDS

108.   McGriff realleges and incorporates by reference paragraphs 1 through 51 above as if set forth fully herein.

109.   During his employment with McGriff as a Senior Vice President, D. Fields owed McGriff fiduciary duties to refrain from disclosing McGriff's confidential information, misappropriating McGriff's trade secrets for a competitor's benefit, and soliciting McGriff's customers and employees for a competing business.

110.   D. Fields continues to owe a duty of confidentiality to McGriff to refrain from disclosing McGriff's confidential information or misappropriating its trade secrets.

7698703v.1

111.   D. Fields breached his fiduciary duties by failing to inform McGriff that he was performing work on Alliant's behalf while he was still employed by McGriff. This omission directly enabled him to continue to have access to McGriff's confidential trade secrets for several weeks, during which period he took information relating to McGriff's customers for the benefit of himself and/or Alliant, a competitor of McGriff.

112.   D. Fields further breached his fiduciary duties by using McGriff's information to solicit McGriff customers on Alliant's behalf in direct competition with McGriff.

113.   D. Fields also breached his fiduciary duties by recruiting, while still employed by McGriff as a Senior Vice President, several of his subordinates to leave McGriff and join him at Alliant, McGriff's competitor.  As of the filing of this Amended Complaint, McGriff has lost over twenty (20) employees who all resigned without notice and joined Alliant.

114.   McGriff has come into possession of information confirming that D. Fields negotiated salary and bonus packages for McGriff employees prior to his resignation to entice McGriff employees to join him at Alliant.

115.   As a direct and proximate result of D. Fields's breaches of his fiduciary duties, McGriff has been damaged and D. Fields has gained and benefited and will continue to gain and benefit.

29

116.   Upon information and belief, D. Fields's acts were fraudulent and malicious. Accordingly, McGriff is entitled to recovery of damages and attorneys' fees.

## COUNT VIII
## BREACH OF NONSOLICITATION PROVISIONS IN
## EMPLOYMENT CONTRACT AGAINST LITTLESTONE

117.   McGriff realleges and incorporates by references paragraphs 1 through 51 above as if set forth fully herein.

118.   This is an action against Littlestone for breach of contract.

119.   Littlestone breached the nonsolicitation provisions of the Littlestone Agreement by: (1) maintaining and diverting business relationships from McGriff to Alliant, a company that directly competes with McGriff; (2) soliciting McGriff's clients on behalf of Alliant; (3) soliciting, recruiting, and encouraging McGriff employees to leave employment with McGriff; and (4) using his son C. Littlestone, to indirectly solicit and divert customers and employees to Alliant.

120.   The restrictive covenants contained in paragraph 8 of the Littlestone Agreement are reasonably necessary to protect McGriff's legitimate business interests.

121.  McGriff has a legitimate business interest in its confidential, proprietary, and professional and/or trade secret information, its relationships with

30

its clients and in the good will it developed with its clients, and the employment relationships with its employees.

122.   As a result of Littlestone's actions, McGriff has been damaged.

**WHEREFORE**, McGriff respectfully requests that this Court enter judgment against Littlestone for: (1) compensatory damages associated with Littlestone's breaches of the Employment Agreement, together with pre- and post-judgment interest thereon; (2) attorneys' fees and costs; and (3) such other and further relief as may be just and proper.

<u>**COUNT IX**</u>
**BREACH OF NONSOLICITATION PROVISIONS IN EMPLOYMENT CONTRACT AGAINST DISCH**

123.   McGriff realleges and incorporates by references paragraphs 1 through 51 above as if set forth fully herein.

124.   This is an action against Disch for breach of contract.

125.   Disch breached the nonsolicitation provisions of the Disch Agreement by: (1) maintaining and diverting business relationships from McGriff to Alliant, a company that directly competes with McGriff; (2) soliciting McGriff's clients on behalf of Alliant; and (3) soliciting, recruiting, and encouraging McGriff employees to leave employment with McGriff.

31

126.   The restrictive covenants contained in paragraphs 15 of the Disch Agreement are reasonably necessary to protect McGriff's legitimate business interests.

127.   McGriff has a legitimate business interest in it confidential, proprietary, and professional and/or trade secret information, its relationships with its clients and in the good will it developed with its clients, and the employment relationships with its employees.

128.   As a result of Disch's actions, McGriff has been damaged.

**WHEREFORE**, McGriff respectfully requests that this Court enter judgment against Disch for: (1) compensatory damages associated with Disch's breaches of the Employment Agreement, together with pre- and post-judgment interest thereon; (2) attorneys' fees and costs; and (3) such other and further relief as may be just and proper.

## COUNT X
### BREACH OF NONSOLICITATION PROVISIONS IN EMPLOYMENT CONTRACT AGAINST D. FIELDS

129.   McGriff realleges and incorporates by references paragraphs 1 through 51 above as if set forth fully herein.

130.   This is an action against D. Fields for breach of contract.

131.   D. Fields breached the nonsolicitation provisions of the D. Fields Agreement by: (1) maintaining and diverting business relationships from McGriff

to Alliant, a company that directly competes with McGriff; (2) soliciting McGriff's clients on behalf of Alliant; (3) soliciting, recruiting, and encouraging McGriff employees to leave employment with McGriff; and (4) recruiting customers to leave.

132.   The restrictive covenants contained in paragraph 8 of the D. Fields Agreement are reasonably necessary to protect McGriff's legitimate business interests.

133.   McGriff has a legitimate business interest in its confidential, proprietary, and professional and/or trade secret information, its relationships with its clients and in the good will it developed with its clients, and the employment relationships with its employees.

134.   As a result of D. Fields' actions, McGriff has been damaged.

**WHEREFORE**, McGriff respectfully requests that this Court enter judgment against D. Fields for: (1) compensatory damages associated with D. Fields' breaches of the Employment Agreement, together with pre- and post-judgment interest thereon; (2) attorneys' fees and costs; and (3) such other and further relief as may be just and proper.

7698703v.1

**COUNT XI**
**BREACH OF NONSOLICITATION PROVISIONS IN**
**EMPLOYMENT CONTRACT AGAINST M. FIELDS**

135.   McGriff realleges and incorporates by references paragraphs 1 through 51 above as if set forth fully herein.

136.   This is an action against M. Fields for breach of contract.

137.   M. Fields breached the nonsolicitation provisions of the M. Fields Agreement by: (1) maintaining and diverting business relationships from McGriff to Alliant, a company that directly competes with McGriff; (2) soliciting McGriff's clients on behalf of Alliant; (3) soliciting, recruiting, and encouraging McGriff employees to leave employment with McGriff; and (4) recruiting customers to leave.

138.   The restrictive covenants contained in paragraph 8 of the M. Fields Agreement are reasonably necessary to protect McGriff's legitimate business interests.

139.   McGriff has a legitimate business interest in its confidential, proprietary, and professional and/or trade secret information, its relationships with its clients and in the good will it developed with its clients, and the employment relationships with its employees.

140.   As a result of M. Fields' actions, McGriff has been damaged.

**WHEREFORE**, McGriff respectfully requests that this Court enter judgment against M. Fields for: (1) compensatory damages associated with M. Fields' breaches of the Employment Agreement, together with pre- and post-judgment interest thereon; (2) attorneys' fees and costs; and (3) such other and further relief as may be just and proper.

<u>**COUNT XII**</u>
**DECLARATORY JUDGMENT – ALLIANT, LITTLESTONE, D. FIELDS, M. FIELDS, AND DISCH**

141.   McGriff realleges and incorporates by references paragraphs 1 through 51 above as if set forth fully herein

142.   This is an action against the Defendants for declaratory relief pursuant to the "Declaratory Judgment Act," codified at 28 U.S.C. § 2201, as well as other applicable law, to determine the extent to which Defendants may continue to use unlawful means to achieve legal, business, and financial objectives that would be impossible but for Littlestone, Disch, D. Fields, and M. Fields' breach of their Agreements and Alliant's employment of Littlestone, Disch, D. Fields, and M. Fields with knowledge of the breached Agreements and use of the confidential and proprietary information.

143.   The controversy (hereinafter referred to as the "Controversy") among the Parties focuses on whether or not Alliant can continue to utilize the information Littlestone, Disch, D. Fields, and M. Fields provided to it in direct violation of the

35

Employment Agreement and whether Littlestone, Disch, D. Fields, and M. Fields'

may continue to violate their Agreements.  Littlestone, Disch, D. Fields, and M.

Fields apparently believe that they can do so, directly and indirectly, by continuing

to solicit McGriff's clients, employees, and use confidential information to attempt

to obtain McGriff's clients.  Alliant apparently believes that it can continue to do

so by continuing to use and benefit from the information provided to Alliant by

Littlestone, Disch, D. Fields, and M. Fields in violation of their Agreements.

Defendants' conduct is collectively referred to as the "Actionable Misconduct."

144.   There is a *bona fide*, actual, present practical need for a declaration of

the rights and duties of McGriff and the Defendants with respect to this

Controversy.

145.   The facts surrounding the Controversy are readily ascertainable and

can be readily established.   McGriff and the Defendants require timely

adjudication of the Controversy as the status of current business, financial, and

legal affairs continue to create an unacceptable situation for all involved.

146.   McGriff seeks declaratory relief that the Actionable Misconduct by

the Defendants is in breach of Littlestone, Disch, D. Fields, and M. Fields'

contractual relations with McGriff, that the Defendants may not disclose and

otherwise continue to misuse McGriff's confidential information, that the

Defendants may not continue to unfairly compete with McGriff, to solicit clients,

36

all in a manner prohibited under the Agreements and that all of the foregoing is tortious and actionable by McGriff against the Defendants.

147.   The rights of McGriff and the Defendants (together, the "Parties"), and other interested parties, are dependent upon the adjudication of the Controversy.

148.   The Parties are all before this Court, and thus this is the correct forum in which to determine the rights of the Parties.

149.   A range of equitable considerations, including a weighing of the relative burdens on the Parties to this proceeding, and the equitable nature and authority of the Court, dictate that declaratory relief regarding the Controversy is appropriate at this time.

150.   It cannot be reasonably disputed that:

    a.   the Parties will experience a substantial continuing Controversy based upon the claims on the subject Actionable Misconduct;

    b.   the continuation of the Actionable Misconduct is assured in absence of judicial intervention;

    c.   the Actionable Misconduct is real and immediate, and not conjectural, hypothetical, contingent, or speculative; and

    d.   an actual controversy exists regarding the Actionable Misconduct.

151.   The Controversy presented in this Count is ripe.   The Parties are unsure as to their relative rights and remedies as to the Controversy. The Parties require this Court's declaratory relief in order to proceed.

## COUNT XIII
## INJUNCTIVE RELIEF – ALLIANT AND LITTLESTONE AND DISCH

152.   This is an action for injunctive relief, to enjoin the Defendants from engaging in any continuation of the Actionable Misconduct or asserting or engaging in any conduct predicated upon the violation of the Littlestone, Disch, D. Fields, and M. Fields Agreements.

153.   McGriff reincorporates by reference the allegations contained in paragraphs 1 through 51 above as though fully set forth herein.

154.   The relief sought in this Amended Complaint is expressly contemplated pursuant to the language in the Agreements as it pertains to Littlestone, Disch, D. Fields, and M. Fields' conduct within this district, as agents and extensions of Alliant, and under principals of *respondeat superior*.

155.   Alliant is causing Littlestone, Disch, D. Fields, and M. Fields to further breach the nonsolicitation and confidentiality provisions in their new capacities at Alliant.

38

156. McGriff is also entitled to injunctive relief with respect to continued disclosure of confidential information pursuant to the language in both former employee's Agreements.

157. McGriff has invested substantially in the development of its customers, employees, confidential information, and other resources. McGriff has further developed an enormous amount of goodwill with its customers in the Florida markets. Substantial relationships of this kind, associated with a particular geographic location or marketing area are legitimate business interests justifying a restrictive covenant.

158. It is long recognized that business relationship with customers and goodwill in the community as a legitimate business interest worthy of protection. *Akey v. Murphy*, 238 So. 2d 94, 96 (Fla. 1970) (goodwill is a reasonable interest sufficient to support a covenant not to compete and transfer of goodwill is implied in connection with the withdrawal of a partner from a medical business); *Karlin v. Weinberg*, 390 A. 2d 1161, 1166 (N.J. 1978) (employers have a legitimate interest in protection of Customer relationships); *Weber v. Tillman*, 913 P.2d 84, 92 (Kan. 1996) (recognizing that goodwill developed over years of business activities is a recognized protectable interest that former employee should not be allowed to misappropriate); *Cogley Clinic v. Martini*, 112 N.W.2d 679, 681-682 (Iowa 1962) (finding restriction reasonably justified to protect business activities' goodwill even

39

where employer failed to show an exodus of Customers since the opening of competing business's new office); *Canfield v. Spear*, 254 N.t.2d 433 (HI. 1969) (restrictive covenant was reasonable and health clinic had protectable interest in patients even though clinic had not yet obtained a replacement dermatologist). McGriff's business is no different for purposes of protecting it from the actions of the Defendants as the instigators of the breaches of the Agreements by Littlestone and Disch.

159.  In addition to McGriff's legitimate interest in its customer base, human resources, and goodwill, McGriff has a legitimate business interest in protecting the confidential information.  Littlestone, Disch, D. Fields, and M. Fields executed their Agreements in favor of McGriff as a condition to their employment.  McGriff has a legitimate business interest in protecting its initial investment in the confidential information that is within Littlestone, Disch, D. Fields, and M. Fields' business knowledge at this time.

160.  The heart of all enforceable covenants not to compete is the aim of preventing unfair competition or unjust enrichment at the employer's expense. McGriff also has a legitimate business interest in protecting its financial interests and other relationships that depend on the nonsolicitation provisions among the employees.  McGriff has a legitimate business interest in the continued success of its business activities, which is dependent upon the enforcement of the

40

nonsolicitation agreements among all of its present and applicable former employees.

161.   When McGriff commits to its employees, these employees receive numerous benefits from McGriff.  But without the protection of the Agreements, McGriff has no protection against its employees leaving once they have used McGriff's resources to build their business activities.  Such an appropriation of McGriff's assets is clearly unfair competition and justifies its restrictive covenant. This is all the more obvious when one considers the magnitude of Alliant, which has participated in the fruits of Littlestone, Disch, D. Fields, and M. Fields' misconduct for its own benefit.

162.   The duration of the Agreements is extremely reasonable given the length of time it may take McGriff to reconstitute the team of employees to service its customers. Furthermore, the duration of the Breached Agreements is a reasonable amount of time for McGriff to attempt to retain its customer base using its existing employees, while at the same time introducing new employees to the community.

163.   As set out above, the damages McGriff will suffer if the Breached Agreements are not enforced are incalculable and include intangible losses such as loss of goodwill and referral sources.  Furthermore, the effect of the failure to enforce the Agreements is incalculable.  The damages stemming from the reach of

41

the Breached Agreements do not provide McGriff with an adequate remedy at law because a money judgment is not sufficient.

164.   Furthermore, the same reasons that justify an assumption of irreparable injury upon establishing an enforceable restrictive covenant normally make it clear that money damages, even if capable of being proved, cannot compensate an employer for all aspects of such a violation.  The loss of goodwill does not simply stem from the loss of a few of the customers or employees, but from the invasion of McGriff's corporate privacy, and the convenient taking of customer information and confidential information that have required many years for McGriff to develop.

165.   Alliant, including through its employment of Littlestone, Disch, D. Fields, and M. Fields, is now in direct competition with McGriff and its remaining employees. As extensions of Alliant, Littlestone, Disch, D. Fields, and M. Fields have attempted to arrogate customers, confidential information, and other resources of McGriff. Through Littlestone, Disch, D. Fields, and M. Fields, Alliant is soliciting to transfer existing customers, employees, confidential information, and other resources to Alliant at the unfair expense of McGriff.

166.   McGriff depends upon its customers, confidential information, and other resources for the continued success of its business activities. McGriff has

42

long standing relationships with its customers within this district and throughout Florida. McGriff is entitled to protect its relationships within the areas.

167. As a result of the Actionable Misconduct, McGriff has been harmed and believes itself to be at risk in business, financial, and legal terms unless judicial intervention is forthcoming.

168. Unless the Actionable Misconduct ceases, McGriff will continue to suffer irreparable harm.

169. With respect to the Actionable Misconduct, McGriff lacks an adequate remedy at law.

170. In particular, but without limitation, the Defendants should be enjoined from the following activities wherever prohibited:

  a. the Defendants must be enjoined from authorizing or directing Littlestone, Disch, D. Fields, and M. Fields from using any Confidential Information derived from their tenure at McGriff;

  b. the Defendants must be enjoined from acting, by or through Littlestone, Disch, D. Fields, and M. Fields to access records of McGriff that constitute confidential information, including client lists and contact information, of McGriff;

  c. the Defendants must be enjoined from soliciting customers, by or through Littlestone, Disch, D. Fields, and M. Fields;

43

d. the Defendants must be enjoined from soliciting McGriff employees, by or through Littlestone, Disch, D. Fields, and M. Fields;

e. Alliant must be enjoined from otherwise authorizing or directing breach of the Agreements by Littlestone, Disch, D. Fields, and M. Fields.

**WHEREFORE**, McGriff requests injunctive relief regarding all of the Actionable Misconduct, in its favor and against the Defendants, consistent with all of the foregoing, and all other appropriate relief.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, McGriff, requests that the Court:

(1) Order Defendants to disgorge all revenues obtained from McGriff clients serviced by Littlestone, Disch, D. Fields, and M. Fields through their employment at Alliant;

(2) Award McGriff its actual damages for injuries suffered as a result of Defendants' misconduct;

(3) Enter a Declaratory Judgment regarding Littlestone, Disch, D. Fields, and M. Fields further violation of their Agreements;

44

(4) Enter Injunctive Relief regarding Littlestone, Disch, D. Fields, and M. Fields further violation of their Agreement, including solicitation of customers and employees;

(5) Award McGriff damages for unjust enrichment caused by Defendants' misappropriation and unlawful use of McGriff's trade secrets;

(6) Award McGriff relief and actual damages as a result of C. Littlestone's knowing tortious interference with the Littlestone and Disch contracts;

(7) Award exemplary damages for Defendants' willful and malicious actions;

(8) Award attorneys' fees and costs of suit; and

(9) Grant such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated:  August 25, 2021

/s/Angelique Groza Lyons
Angelique Groza Lyons, Esq., Fla. Bar No. 118801
alyons@constangy.com
**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**
100 North Tampa Street, Suite 3350
Post Office Box 1840
Tampa, Florida  33601-1840
(813) 223-7166 / Fax: (813) 223-2515

45

7698703v.1

William J. McMahon, Esq., NC Bar No. 34097
bmcmahon@constangy.com
**CONSTANGY, BROOK, SMITH &**
**PROPHETE, LLP**
100 N. Cherry Street, Suite 300
Winston-Salem, NC 27101
(336) 721-1001
*Admitted Pro Hac Vice*

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of August, 2021, I filed a true copy of the foregoing document with the clerk of court using the CM/ECF System, which will send a notice of electronic filing to the following:

Luis E. Llamas, Esq.
Jones Walker LLP
201 S. Biscayne Blvd., Ste. 2600
Miami, Fl 33131
llamas@joneswalker.com

Jacob J. Pritt, Esq.
Joseph F. Lavigne, Esq.
Jones Walker LLP
201 St. Charles Ave., 47th Floor
New Orleans, LA 70170
jpritt@joneswalker.com
jlavigne@joneswalker.com

Attorneys for Defendants

/s/Angelique Groza Lyons
Attorney for Plaintiff

7698703v.1