```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

MCGRIFF INSURANCE SERVICES,
INC., f/k/a BB&T Insurance
Services, Inc.,

    Plaintiff,

v.                              Case No:  2:21-cv-480-JES-NPM

EUGENE LITTLESTONE, CALEB
LITTLESTONE, DAWN DISCH,
DOUGLAS FIELDS, MICHAEL
FIELDS, and ALLIANT
INSURANCE SERVICES, INC.,

    Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on review of defendants[1] Eugene Littlestone (E. Littlestone), Caleb Littlestone (C. Littlestone), Douglas Fields (D. Fields), Michael Fields (M. Fields), and Alliant Insurance Services, Inc.'s (Alliant) Motion for Partial Dismissal Pursuant to Rule 12(B)(6) (Doc. #65) filed on September 14, 2021.  Plaintiff filed a Response in Opposition (Doc. #69) on October 5, 2021.

### I.

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing

---

[1] Dawn Disch filed a separate motion.  (Doc. #64.)

that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations,

a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

## II.

The Court previously summarized the general facts in the Second Amended Complaint (Doc. #53) as follows:

> In November 2009, E. Littlestone began his employment with McGriff, and he entered into an Employee Agreement on November 2, 2009. McGriff changed its name in 2018 to BB&T Insurance Services. During his 11-year tenure, E. Littlestone worked as an insurance agent. The Employment Agreement was amended on January 1, 2011 and January 8, 2018, but the confidentiality and non-solicitation provisions remained intact. (Id., ¶¶ 18-20.)
>
> . . . . Both E. Littlestone and Disch started working with Alliant, a direct competitor. (Id., ¶¶ 24-25, 27.)
>
> Alliant also solicited C. Littlestone, the son of E. Littlestone. The son does not have a written employment agreement with McGriff, and therefore E. Littlestone and Disch used him to indirectly solicit and take customers and employees from McGriff to Alliant. (Id., ¶ 30.) In June 2021, McGriff came into possession of information confirming that its clients were solicited by E. Littlestone and Disch. Plaintiff alleges that the solicitation is ongoing. (Id., ¶ 31.)
>
> In November 2009, D. Fields began his employment, and he signed an Employee Agreement on November 2, 2009. For most of his employment, McGriff was known as BB&T Insurance Services until the name change in 2018. During his 11-year tenure, D. Fields worked as an insurance agent. (Id., ¶¶ 32-33.) On January 10, 2018, the D. Fields Agreement was amended but the confidentiality or non-

3

>solicitation provisions remained intact. (Id., ¶ 34.) M. Fields began with McGriff, also known as BB&T Insurance Services, in May 2012, at which time he entered into an Employee Agreement. (Id., ¶¶ 37, 38.) On January 11, 2018, the Employment Agreement was amended but not as to confidentiality or non-solicitation provisions. [(Id., ¶] 39.) After departing McGriff, D. Fields and M. Fields began working for Alliant, and in June 2021, McGriff came into information confirming that its clients were solicited by D. Fields and M. Fields. (Id., ¶¶ 43, 46.)
>
>In June 2021, McGriff came into possession of information that D. Fields texted an employee to solicit them to leave McGriff and join Alliant, and that D. Fields and M. Fields disclosed their departure to McGriff's customers and clients weeks before informing McGriff to take their business to Alliant. (Id., ¶¶ 47, 48.)
>
>Count I alleges tortious interference with a breached contract against Alliant and Count V alleges tortious interference with an advantageous business relationship against E. Littlestone, C. Littlestone, Disch, D. Fields, M. Fields, and Alliant. Count VI and Count VII allege a breach of fiduciary duty against E. Littlestone (Count VI) and D. Fields (Count VII). Count III alleges a misappropriation of trade secrets in violation of 18 U.S.C. § 1836 and Count IV alleges a misappropriation of trade secrets under Florida law. Count XII seeks a declaratory judgment and Count XIII seeks injunctive relief.

McGriff Ins. Servs., Inc. v. Littlestone, et al., No. 2:21-CV-480-JES-NPM, 2021 WL 4272980, at *2 (M.D. Fla. Sept. 21, 2021).

### **III.**

Defendants seek to dismiss Count I to the extent that it applies to plaintiff's customer relationships.  Defendants seek

4

dismissal of Counts III and IV for misappropriation of trade secrets and Counts VI and VII for breach of fiduciary duty in their entirety. Defendants also seek dismissal of Count V for tortious interference with advantageous business relationships for failure to identify any clients or groups of clients with whom defendants interfered.

Counts I & V – Tortious Interference

"The elements of tortious interference with a business relationship are (1) the existence of a business relationship (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 814 (Fla. 1994) (citation omitted). "As a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." Id., at 815.

"In considering the element of causation, Florida courts have held that the plaintiff must plead and prove that the defendant manifested a specific intent to interfere with the business relationship." [ ] Thus, even if the defendant is aware of the existing business relationship, the defendant will not be liable

5

for tortious interference with that relationship unless there is evidence that the defendant intended to procure a breach of the contract." Chicago Title Ins. Co. v. Alday-Donalson Title Co. of Fla., Inc., 832 So. 2d 810, 814 (Fla. 2d DCA 2002) (internal citation omitted). "One does not induce another to commit a breach of contract with a third person under the rule stated in this Section when he merely enters into an agreement with the other with knowledge that the other cannot perform both it and his contract with the third person." Martin Petroleum Corp. v. Amerada Hess Corp., 769 So. 2d 1105, 1107 (Fla. 4th DCA 2000) (quoting Restatement (Second) of Torts § 766 cmt. n (1977)).

In Count I, plaintiff alleges that E. Littlestone, D. Fields, and M. Fields breached the restrictive covenants in their Employment Agreements at the direction of and for the benefit of Alliant. (Doc. #53, ¶ 53.) Plaintiff alleges that Alliant knew or should have known that of the Employment Agreements, yet Alliant intentionally and knowingly interfered with plaintiff's business and contractual relations with its clients. Plaintiff alleges that Alliant induced the individual defendants to breach their Employment Agreements by knowingly maintaining the benefit of plaintiff's trade secrets and by facilitating defendants to steal clients. (Id., ¶¶ 55-56.) Plaintiff alleges that Alliant continues to knowingly possess, derive a benefit form, and use converted customers and information obtained by the individual

defendants in violation of their Employment Agreements. (Id., ¶ 57.) Plaintiff alleges damages stemming from the tortious interference. (Id., p. 17.)

In the motion, "Defendants vehemently deny that Alliant tortiously interfered with the Individual Defendants' employment agreements with McGriff, but do not contest that McGriff has sufficiently pled those claims as required at this stage of the litigation. This motion is limited to the tortious interference with contract claims based on McGriff's contracts with its customers." (Doc. #65, p. 7.) In response, plaintiff clarifies that no such claim is presented in Count I, only in Count V. (Doc. #69, p. 3.) Therefore, the motion is denied as moot as to Count I.

To show tortious interference with an advantageous business relationship "requires (1) the existence of an advantageous business relationship under which the plaintiff has legal rights, (2) an intentional and unjustified interference with that relationship by the defendant, and (3) damage to the plaintiff as a result of the breach of the business relationship." Lake Gateway Motor Inn, Inc. v. Matt's Sunshine Gift Shops, Inc., 361 So. 2d 769, 771 (Fla. 4th DCA 1978).

In Count V, plaintiff alleges that Alliant and the individual defendants tortiously interfered with plaintiff's advantageous business relationship with its clients. (Doc. #53, ¶¶ 94-95.)

Plaintiff alleges that Alliant knew of the relationship through the individual defendants and together used plaintiff's confidential information to interfere with it. (Id., ¶ 97.) Specifically, plaintiff alleges that C. Littlestone aided and assisted E. Littlestone and another employee to violate their agreements with plaintiff and to secure other employees and customers to join Alliant. (Id., ¶ 98.) Plaintiff alleges damages because of the tortious interference. (Id., ¶ 99.)

Defendant Alliant argues that Count V should be dismissed because plaintiff has failed to identify "with precision" the advantageous business relationships that were interfered with. The individual defendants argue that the claim is preempted by the FUTSA claim to the extent they are based on the use of confidential information. (Doc. #65, p. 18-19.) Plaintiff responds that clients are clearly limited to those being serviced by the Littlestones and the Fields while they were employed with plaintiff and the group is not unidentifiable. (Doc. #69, p. 7.) The Court agrees with this statement.

Plaintiff argues that the claim is not preempted because it is based on interference with client relationships by violation of non-solicitation provisions. (Id., p. 9.) The Court finds that plaintiff has stated a plausible claim for tortious interference in Count V. The Florida Uniform Trade Secrets Act (FUTSA) sections "displace conflicting tort, restitutory, and other law of this

8

state providing civil remedies for misappropriation of a trade secret." Fla. Stat. § 688.008(1). It does not preempt other civil remedies that are not based upon misappropriation of a trade secret. Fla. Stat. § 688.008(2)(b). In this case, plaintiff makes allegations about the solicitation of other employees within Count V, which is distinct from misappropriation of clients lists.[2] The motion is granted to the extent it relies on confidential client information, cf. Allegiance Healthcare Corp. v. Coleman, 232 F. Supp. 2d 1329, 1336 (S.D. Fla. 2002) ("Plaintiff has not identified any material distinction between the wrongdoing alleged in the trade secret claim and that alleged in the unfair competition claim."), and otherwise denied.

Counts III & IV – Trade Secrets

Plaintiff alleges a violation of the Defend Trade Secrets Act (DTSA) and the Florida Uniform Trade Secrets Act (FUTSA). "DTSA and FUTSA can be analyzed together." Freedom Med., Inc. v. Sewpersaud, 469 F. Supp. 3d 1269, 1275 n.6 (M.D. Fla. 2020), order clarified, No. 6:20-CV-771-ORL-37GJK, 2020 WL 3487642 (M.D. Fla. June 25, 2020). "An owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or

---

[2] The Court notes that separate counts are presented alleging a breach of non-solicitation covenants in the Employment Agreement in Counts VIII, IX, X, and XI.

9

intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836.  A trade secret means all "all forms and types of financial, business, scientific, technical, economic, or engineering information," that the owner takes "reasonable measures to keep" secret and the information "derives independent economic value" that is not "readily ascertainable through proper means".  18 U.S.C. § 1839(3).  See also Fla. Stat. § 688.002(4).³  Misappropriation is the "**(A)** acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or **(B)** disclosure or use of a trade secret of another without express or implied consent by a person".  18 U.S.C. § 1839(5); Fla. Stat. § 688.002(2).  The term "improper means" includes by breach or inducement of a breach of a duty to maintain secrecy.  18 U.S.C. § 1839(6).

---

³ (4) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process that:

(a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

"Florida courts have routinely found customer lists to be trade secrets under both statutes when their compilation required 'great time and expense.'" Castellano Cosm. Surgery Ctr., P.A. v. Rashae Doyle, P.A., No. 8:21-CV-1088-KKM-CPT, 2021 WL 3188432, at *5 (M.D. Fla. July 28, 2021) (collecting cases). "[E]ven in the absence of a contractual restriction, a former employee is precluded from using for his own advantage, and to the detriment of his former employer, confidential information or trade secrets acquired by or imparted to him in the course of his employment; and this rule has been affirmed or recognized in many cases dealing with the rights and duties of a former employee who solicits his former employer's customers, or otherwise uses his knowledge of customer lists obtained in his former employment." Erik Elec. Co., Inc. v. Elliot, 375 So. 2d 1136, 1138 (Fla. 3d DCA 1979) (quoting 28 A.L.R.3d 7, 31 § 5 (1969)). "The lack of any express agreement on the part of the employee not to disclose a trade secret is not significant. The law will import into every contract of employment a prohibition against the use of a trade secret by the employee for his own benefit, to the detriment of his employer, if the secret was acquired by the employee in the course of his employment." Unistar Corp. v. Child, 415 So. 2d 733, 734 (Fla. 3d DCA 1982) (citation omitted).

Plaintiff describes the trade secrets as follows:

11

> During their employment with McGriff, D. Fields and M. Fields came into possession of client lists, contact information regarding clients, insurance data such as renewal dates and coverage, pricing information, financial information regarding clients as it relates to their insurance coverage, clients' insurance needs and preferences, insurance products and services preferred and used by clients, and other sensitive information (collectively, the "McGriff Trade Secrets").

(Doc. #53, ¶ 42.)  In Count III, plaintiff alleges that its trade secrets are "subject to reasonable efforts to maintain their secrecy" and defendants misappropriated the trade secrets to solicit plaintiff's clients and potential clients.  (Doc. #53, ¶¶ 69-70.)  Plaintiff revealed the trade secrets to defendants subject to the restrictions contained in their Employment Agreements with the understanding that they would be safeguarded.  (Id., ¶ 71.)  Plaintiff alleges that the trade secrets were taken when defendants left, and that they were disclosed to Alliant to gain a competitive advantage.  Alliant is alleged to know or have reason to know that the trade secrets were acquired by improper means.  (Id., ¶¶ 73-75.)  Plaintiff alleges that the trade secrets are "related to products and services used in interstate commerce, as McGriff provides services and products to clients throughout the United States."  (Id., ¶ 78.)  Defendants are alleged to have misappropriated the trade secrets to convert plaintiff's clients causing damage.  (Id., ¶¶ 79-80.)

In Count IV, plaintiff describes the trade secrets as:

12

> McGriff's client information, including client contact information, insurance data such as renewal dates and coverage, financial information regarding clients as it relates to insurance coverage, client insurance needs and preferences, insurance products and services preferred and used by clients, and confidential information, constitutes a trade secret under Florida law.

(Id., ¶ 85.)  Plaintiff alleges that its sensitive insurance pricing information and other insurance date constitutes a trade secret under Florida law and is not known to third parties.  (Id., ¶ 86.)  Plaintiff alleges that it takes reasonable precautions to maintain the secrecy of the information through the employment agreements and defendants misappropriated the trade secrets by retaining them when they left plaintiff to compete with plaintiff. (Id., ¶¶ 87-88.)  Plaintiff alleges that defendants used the trade secrets to convert plaintiff's clients and the profits associated with the clients for their personal use and the use of their new employer Alliant.  (Id., ¶ 91.)

Defendants argue that plaintiff did not "reasonably identify any trade secrets" with "particularity" that were misappropriated. (Doc. #65, pp. 9-10.)  Defendants argue that the claims must be dismissed because plaintiff has only identified "broad categories of information", and because plaintiff does not delineate how each defendant misappropriated trade secrets, or what trade secrets were used by Alliant to contact customers, or which customers were improperly contacted.  (Id., pp. 12, 13.)

Although Florida courts require trade secrets to be described with "reasonable particularity", all that is required at this stage of the proceedings in federal court are "sufficient facts to plausibly show a trade secret was involved and to give the defendant notice of the material it claims constituted a trade secret." DynCorp Int'l v. AAR Airlift Grp., Inc., 664 F. App'x 844, 848 (11th Cir. 2016). The Court finds that the allegations are sufficient as to description of the trade secrets, however there are no facts to support which defendant took trade secrets, how they took the secrets, when they took it, or how plaintiff knows trade secrets were misappropriated. See, e.g., Am. Mariculture, Inc. v. Syaqua Americas, Inc., No. 2:20-CV-711-JES-MRM, 2021 WL 2315003, at *6 (M.D. Fla. June 7, 2021) ("Specifically, contrary to Plaintiff's express instructions, Defendant surreptitiously copied confidential and trade secret information consisting of breeding records pertaining to AMI shrimp that directly compete against SyAqua shrimp in various international markets. Despite repeated demands, Defendant has failed to return the confidential and trade secret information stolen."). The motion to dismiss will be granted as to Counts III and IV.

Counts VI & VII – Fiduciary Duty

"The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty

such that it is the proximate cause of the plaintiff's damages.[] Florida courts have previously recognized a cause of action for breach of fiduciary duty in different contexts when a fiduciary has allegedly disclosed confidential information to a third party." Gracey v. Eaker, 837 So. 2d 348, 353 (Fla. 2002).

In Count VI, plaintiff alleges that E. Littlestone, as a Senior Vice President, owed plaintiff a fiduciary duty to refrain from disclosing confidential information, misappropriating trade secrets for a competitor's benefit, and soliciting plaintiff's customers and employees for a competing business.  (Doc. #53, ¶ 101.)  Plaintiff argues that E. Littlestone continues to owe a duty of confidentiality to plaintiff to refrain from disclosing plaintiff's confidential information or misappropriating its trade secrets.  (Id., ¶ 102.)

> Littlestone breached his fiduciary duties by failing to inform McGriff that he was performing work on Alliant's behalf while he was still employed by McGriff. This omission directly enabled him to continue to have access to McGriff's confidential trade secrets for several weeks, during which period he took information relating to McGriff's customers for the benefit of himself and/or Alliant, a competitor of McGriff.

(Id., ¶ 103.)  Plaintiff further alleges a breach of fiduciary duties by using plaintiff's information to solicit customers on Alliant's behalf, and by recruiting subordinates causing plaintiff

15

to lose over 20 employees who resigned without notice and joined Alliant. (Id., ¶¶ 104-105.)

In Count VII, plaintiff makes the same allegations as to D. Fields, who was also a Senior Vice President. (Id., ¶¶ 109-113.) Plaintiff additionally allege that D. Fields negotiated salary and bonus packages for plaintiff's employees prior to his resignation to entice plaintiff's employees to join him at Alliant. (Id., ¶ 114.)

Defendants argue that the Employment Agreements for E. Littlestone and D. Fields identify them as mere 'business insurance agents', and the parties disclaimed any and all fiduciary duties outside the agreements. (Doc. #65, pp. 14-15.) Defendants argue that the claims of breach of fiduciary duty based on the misappropriation of trade secrets are preempted by FUTSA. (Doc. #65, p. 17.)

> "A fiduciary relationship exists when one is under a duty to act, or give advice, for the benefit of another upon matters within the scope of that relation." [Crusselle v. Mong, 59 So. 3d 1178, 1181 (Fla. 5th DCA 2011) (citing Doe v. Evans, 814 So. 2d 370, 374 (Fla. 2002)). "An implied fiduciary relationship will lie when there is a degree of dependency on one side and an undertaking on the other side to protect and/or benefit the dependent party." Id. (quoting Masztal v. City of Miami, 971 So. 2d 803, 809 (Fla. 3d DCA 2007)). "'The relation and duties involved need not be legal; they may be moral, social, domestic or personal.'" Evans, 814 So. 2d at 374 (quoting Quinn v. Phipps, 93 Fla. 805, 113 So. 419, 421 (1927)). "'If a relation of trust and

16

>   confidence exists between the parties (that is to say, where confidence is reposed by one party and a trust accepted by the other, or where confidence has been acquired and abused), that is sufficient as a predicate for relief.'" Id. (emphasis removed) (quoting Quinn, 113 So. at 421).

Reuss v. Orlando Health, Inc., 140 F. Supp. 3d 1299, 1304 (M.D. Fla. 2015). Whether a fiduciary duty exists is a fact issue that must be resolved by the jury. Crusselle v. Mong, 59 So. 3d 1178, 1181 (Fla. 5th DCA 2011). For purposes of a motion to dismiss, a plausible claim has been stated. However, the claims appear to be preempted by FUTSA to the extent that the claims rely on the confidential client information. There are allegations referencing solicitation, but this is also the basis for the claims stated in Counts VIII and X as to E. Littlestone and D. Fields. Therefore, the motion to dismiss is granted as to Counts VI and VII to the extent that the fiduciary duties are alleged to be connected to keeping client information secret, and otherwise denied.

Accordingly, it is now

**ORDERED:**

1. Defendant's Motion to Dismiss (Doc. #65) is **GRANTED IN PART AND DENIED IN PART** as to the Second Amended Complaint. The motion is denied as moot as to Count I, granted to the extent that it relies on confidential information in Count V and otherwise denied, granted without prejudice as to

17

   Counts III and IV, granted to the extent that the fiduciary duties are alleged to be connected to keeping client information secret in Counts VI and VII, and otherwise denied.

2. Defendants' Motion for Leave to File a Reply (Doc. #71) is **DENIED** as moot.

   **DONE AND ORDERED** at Fort Myers, Florida, this __12th__ day of October 2021.

                                          _____
                                          JOHN E. STEELE
                                          SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record