# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

MCGRIFF INSURANCE SERVICES, INC.
f/k/a BB&T INSURANCE SERVICES, INC.,

       Plaintiff,                    CASE NO.: 2:21-cv-480-JES-NPM

vs.

EUGENE LITTLESTONE, CALEB
LITTLESTONE, DAWN DISCH, DOUGLAS
FIELDS, MICHAEL FIELDS, and ALLIANT
INSURANCE SERVICES, INC.,

       Defendant.

_____/

## DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Defendants Eugene Littlestone ("E. Littlestone"), Caleb Littlestone ("C. Littlestone"), Douglas Fields ("D. Fields"), Michael Fields ("M. Fields"), and Alliant Insurance Services, Inc. ("Alliant") (collectively, "Defendants") respectfully submit this Answer, Affirmative Defenses, and Counterclaims in response to the Second Amended Complaint ("Complaint") filed by Plaintiff McGriff Insurance Services, Inc. ("McGriff") (R. Doc. 53).

## ANSWER

## Nature of the Case

1.      Defendants deny the allegations in Paragraph 1 of the Complaint and

deny liability to McGriff for any of the causes of action asserted in that paragraph.[1]

2.      Defendants deny the allegations in Paragraph 2 of the Complaint.

3.      Defendants deny the allegations in Paragraph 3 of the Complaint.

4.      Defendants admit the allegations in Paragraph 4 of the Complaint that E. Littlestone, C. Littlestone, Disch, M. Fields, and D. Fields are currently Alliant employees. The remaining allegations in Paragraph 4 are denied.

5.      The Court has dismissed all claims related to alleged misappropriation of trade secrets (*see* R. Doc. 72), so no answer is required to Paragraph 5 of the Complaint. To the extent an answer is required, Defendants deny the allegations of Paragraph 5.

## Parties, Jurisdiction, and Venue

6.      Paragraph 6 of the Complaint states a legal conclusion to which no answer is required. Defendants explicitly deny any liability to McGriff in any amount.

7.      Defendants deny the allegations of Paragraph 7 of the Complaint due to lack of sufficient information to form an opinion on their veracity.

8.      Defendants admit the allegations of Paragraph 8 of the Complaint that E. Littlestone is domiciled within the State of Florida. Defendants deny that E.

---

[1] Although no response is necessary as to any of the allegations against Disch, who was dismissed from this case (*see* R. Doc. 70), Defendants generally deny any wrongdoing on the part of Disch giving rise to any liability to McGriff.

Littlestone was "elected" to the position of Senior Vice President at McGriff.

9.      Defendants admit the allegations of Paragraph 9 of the Complaint.

10.     No response is required to Paragraph 10 of the Complaint, as Disch has been dismissed from the case. To the extent this paragraph impacts the claims against the remaining Defendants, Defendants admit that Disch resides and works in the State of Florida.

11.     Defendants admit the allegations of Paragraph 11 of the Complaint that D. Fields is domiciled within the State of Florida. Defendants deny that D. Fields was "elected" to the position of Senior Vice President at McGriff.

12.     Defendants admit the allegations of Paragraph 12 of the Complaint.

13.     Defendants admit the allegations of Paragraph 13 of the Complaint.

14.     Paragraph 14 of the Complaint states a legal conclusion to which no answer is required.

15.     Paragraph 15 of the Complaint states a legal conclusion to which no answer is required.

16.     Paragraph 16 of the Complaint states a legal conclusion to which no answer is required.

17.     Paragraph 17 of the Complaint states a legal conclusion to which no answer is required.

## Factual Background

18.     Defendants admit the allegations in Paragraph 18 of the Complaint that E. Littlestone worked for McGriff beginning in 2009 as an insurance agent. Defendants deny the remaining allegations in Paragraph 18 because they are not a complete and accurate description of E. Littlestone's job responsibilities when he worked for McGriff.

19.     Defendants admit the allegations of Paragraph 19 of the Complaint.

20.     Defendants admit the allegations of Paragraph 20 of the complaint that E. Littlestone executed the amendments attached as Exhibit 2 to the Complaint. The remaining allegations of Paragraph 20 state a legal conclusion to which no answer is required.

21.     Defendants deny Paragraph 21 of the Complaint to the extent it is inconsistent with the language of the Littlestone Agreement, which is the best evidence of its contents. Defendants further deny any liability to McGriff arising out of the Littlestone Agreement.

22.     Defendants deny Paragraph 22 of the Complaint to the extent it is inconsistent with the language of the Littlestone Agreement, which is the best evidence of its contents. Defendants further deny any liability to McGriff arising out of the Littlestone Agreement.

23.     Paragraph 23 of the Complaint pertains to Disch, who has been

dismissed from the case, so no answer is required. To the extent an answer is required from the other Defendants, Defendants deny any liability to McGriff arising out of or relating to Disch's conduct.

24.     Paragraph 24 of the Complaint pertains to Disch, who has been dismissed from the case, so no answer is required. To the extent an answer is required from the other Defendants, Defendants deny any liability to McGriff arising out of or relating to Disch's conduct.

25.     Paragraph 25 of the Complaint pertains to Disch, who has been dismissed from the case, so no answer is required. To the extent an answer is required from the other Defendants, Defendants deny any liability to McGriff arising out of or relating to Disch's conduct.

26.     Defendants admit the allegations of Paragraph 26 of the Complaint that, while working for McGriff, the Individual Defendants came into possession of certain McGriff information; however, Defendants deny improperly retaining any McGriff information and deny any liability to McGriff related to that information.

27.     Defendants admit the allegations of Paragraph 27 of the Complaint that E. Littlestone and Disch work for Alliant and that Alliant's commercial insurance brokerage division of its business is a direct competitor of McGriff.

28.     Defendants deny the allegations in Paragraph 28 of the Complaint.

29.     Defendants deny the allegations in Paragraph 29 of the Complaint.

30.     Defendants admit the allegations in Paragraph 30 of the Complaint that C. Littlestone is E. Littlestone's son and that C. Littlestone does not have an employment agreement with McGriff. Defendants deny the remaining allegations in Paragraph 30.

31.     Defendants deny the allegations of Paragraph 31 of the Complaint.

32.     Defendants admit the allegations in Paragraph 32 of the Complaint that D. Fields worked for McGriff beginning in 2009 as an insurance agent. Defendants deny the remaining allegations in Paragraph 32 because they are not a complete and accurate description of D. Fields' job responsibilities when he worked for McGriff.

33.     Defendants admit the allegations in Paragraph 33 of the Complaint.

34.     Defendants admit the allegations of Paragraph 34 of the complaint that D. Fields executed the amendments attached as Exhibit 5 to the Complaint. The remaining allegations of Paragraph 34 state a legal conclusion to which no answer is required.

35.     Defendants deny the allegations of Paragraph 35 of the Complaint to the extent they are inconsistent with the language of the D. Fields Agreement, which is the best evidence of its contents. Defendants further deny any liability to McGriff arising out of the D. Fields Agreement.

36.     Defendants deny the allegations of Paragraph 36 of the Complaint to the extent they are inconsistent with the language of the D. Fields Agreement, which

is the best evidence of its contents. Defendants further deny any liability to McGriff arising out of the D. Fields Agreement.

37.    Defendants admit the allegations in Paragraph 37 of the Complaint that M. Fields worked for McGriff beginning in 2012 as an insurance agent. Defendants deny the remaining allegations in Paragraph 37 because they are not a complete and accurate description of M. Fields' job responsibilities when he worked for McGriff.

38.    Defendants admit the allegations of Paragraph 38 of the Complaint.

39.    Defendants admit the allegations of Paragraph 39 of the complaint that M. Fields executed the amendments attached as Exhibit 7 to the Complaint. The remaining allegations of Paragraph 39 state a legal conclusion to which no answer is required.

40.    Defendants deny the allegations of Paragraph 40 of the Complaint to the extent they are inconsistent with the language of the M. Fields Agreement, which is the best evidence of its contents. Defendants further deny any liability to McGriff arising out of the M. Fields Agreement.

41.    Defendants deny Paragraph 41 of the Complaint to the extent it is inconsistent with the language of the M. Fields Agreement, which is the best evidence of its contents. Defendants further deny any liability to McGriff arising out of the M. Fields Agreement.

42.    Defendants admit the allegations of Paragraph 42 of the Complaint that,

while working for McGriff, the Individual Defendants came into possession of certain McGriff information; however, Defendants deny the allegations in Paragraph 42 that they improperly retained any McGriff information and deny any liability to McGriff related to that information.

43.     Defendants admit the allegations in Paragraph 43 of the Complaint that D. Fields and M. Fields work for Alliant and that Alliant's commercial insurance brokerage division of its business is a direct competitor of McGriff.

44.     Defendants deny the allegations of Paragraph 44 of the Complaint.

45.     Defendants deny the allegations of Paragraph 45 of the Complaint.

46.     Defendants deny the allegations of Paragraph 46 of the Complaint.

47.     Defendants deny the allegations of Paragraph 47 of the Complaint.

48.     Defendants deny the allegations of Paragraph 48 of the Complaint.

49.     Defendants deny the allegations of Paragraph 49 of the Complaint.

50.     Defendants deny the allegations of Paragraph 50 of the Complaint.

51.     Defendants deny the allegations of Paragraph 51 of the Complaint.

## Count I

52.     Defendants incorporate their answers to Paragraphs 1-51 as previously set forth.

53.     Defendants deny the allegations of Paragraph 53 of the Complaint.

54.     Defendants deny the allegations of Paragraph 54 of the Complaint for

lack of information sufficient to form an opinion on their veracity.

55.     Defendants deny the allegations of Paragraph 55 of the Complaint.

56.     Defendants deny the allegations of Paragraph 56 of the Complaint.

57.     The Court has dismissed McGriff's tortious interference claims to the extent they are based on alleged misappropriation of confidential information, so no answer to Paragraph 57 of the Complaint is required. To the extent an answer is required, Defendants deny the allegations in Paragraph 57.

58.     Defendants deny the allegations of Paragraph 58 of the Complaint.

Defendants further deny that McGriff is entitled to any of the relief set forth in the "wherefore" paragraph following Count I.

## **Count II**

59.     Defendants incorporate their answers to Paragraphs 1-51 as previously set forth.

60.     Defendants deny the allegations of Paragraph 60 of the Complaint.

61.     Defendants deny the allegations of Paragraph 61 of the Complaint.

62.     Because Disch has been dismissed from the case, no answer to Paragraph 62 of the Complaint is required. To the extent an answer is relevant to any claims against any other Defendants, the allegations in Paragraph 62 are denied.

63.     Defendants deny the allegations of Paragraph 63 of the Complaint.

64.     Defendants deny the allegations of Paragraph 64 of the Complaint.

65.     Defendants deny the allegations of Paragraph 65 of the Complaint.

66.     Defendants deny the allegations of Paragraph 66 of the Complaint.

Defendants further deny that McGriff is entitled to any of the relief set forth in the "wherefore" paragraph following Count II.

## Counts III and IV

Defendants incorporate their answers to Paragraphs 1-51 of the Complaint as previously set forth. The Court has dismissed Counts III and IV of the Complaint, so no answer is required. However, out of an abundance of caution, Defendants generally deny all allegations in Counts III and IV of the Complaint. Defendants further deny any liability to McGriff for misappropriation of trade secrets.

## Count V

93.     Defendants incorporate their answers to Paragraphs 1-51 of the Complaint as previously set forth.

94.     Defendants deny the allegations of Paragraph 94 of the Complaint.

95.     Defendants deny the allegations of Paragraph 95 of the Complaint.

96.     Defendants deny the allegations of Paragraph 96 of the Complaint.

97.     Defendants deny the allegations of Paragraph 97 of the Complaint. Defendants further note that the Court has dismissed Count V to the extent it is based on alleged improper use of confidential information.

98.     Defendants deny the allegations of Paragraph 98 of the Complaint.

99.     Defendants deny the allegations of Paragraph 99 of the Complaint.

Defendants further deny that McGriff is entitled to any of the relief set forth in the "wherefore" paragraph following Count V.

## Count VI

100.    Defendants incorporate their answers to Paragraphs 1-51 of the Complaint as previously set forth.

101.    Defendants deny the allegations of Paragraph 101 of the Complaint. Defendants further note that Count VI has been dismissed to the extent it is based on alleged misappropriation of confidential information.

102.    Defendants deny the allegations of Paragraph 102 of the Complaint. Defendants further note that Count VI has been dismissed to the extent it is based on alleged misappropriation of confidential information.

103.    Defendants deny the allegations of Paragraph 103 of the Complaint. Defendants further note that Count VI has been dismissed to the extent it is based on alleged misappropriation of confidential information.

104.    Defendants deny the allegations of Paragraph 104 of the Complaint. Defendants further note that Count VI has been dismissed to the extent it is based on alleged misappropriation of confidential information.

105.    Defendants deny the allegations of Paragraph 105 of the Complaint.

106.    Defendants deny the allegations of Paragraph 106 of the Complaint.

107.   Defendants deny the allegations of Paragraph 107 of the Complaint.

## Count VII

108.   Defendants incorporate their answers to Paragraphs 1-51 of the Complaint as previously set forth.

109.   Defendants deny the allegations of Paragraph 109 of the Complaint. Defendants further note that Count VII has been dismissed to the extent it is based on alleged misappropriation of confidential information.

110.   Defendants deny the allegations of Paragraph 110 of the Complaint. Defendants further note that Count VII has been dismissed to the extent it is based on alleged misappropriation of confidential information.

111.   Defendants deny the allegations of Paragraph 111 of the Complaint. Defendants further note that Count VII has been dismissed to the extent it is based on alleged misappropriation of confidential information.

112.   Defendants deny the allegations of Paragraph 112 of the Complaint. Defendants further note that Count VII has been dismissed to the extent it is based on alleged misappropriation of confidential information.

113.   Defendants deny the allegations of Paragraph 113 of the Complaint.

114.   Defendants deny the allegations of Paragraph 114 of the Complaint.

115.   Defendants deny the allegations of Paragraph 115 of the Complaint.

116.   Defendants deny the allegations of Paragraph 116 of the Complaint.

## Count VIII

117.    Defendants incorporate their answers to Paragraphs 1-51 of the Complaint as previously set forth.

118.    Defendants deny the allegations of Paragraph 118 of the Complaint.

119.    Defendants deny the allegations of Paragraph 119 of the Complaint.

120.    Defendants deny the allegations of Paragraph 120 of the Complaint.

121.    Defendants deny the allegations of Paragraph 121 of the Complaint.

122.    Defendants deny the allegations of Paragraph 122 of the Complaint.

Defendants further deny that McGriff is entitled to any of the relief set forth in the "wherefore" paragraph following Count VIII.

## Count IX

Defendants incorporate their answers to Paragraphs 1-51 of the Complaint as previously set forth. Because Disch has been dismissed from this lawsuit, no answer is required to the allegations in Count IX. However, out of an abundance of caution, and to the extent the allegations against Disch are relevant to any claims against the remaining Defendants, Defendants generally deny the allegations contained in Count IX. Defendants deny any liability to McGriff for any actions taken by Disch.

## Count X

129.    Defendants incorporate their answers to Paragraphs 1-51 of the Complaint as previously set forth.

130.   Defendants deny the allegations of Paragraph 130 of the Complaint.

131.   Defendants deny the allegations of Paragraph 131 of the Complaint.

132.   Defendants deny the allegations of Paragraph 132 of the Complaint.

133.   Defendants deny the allegations of Paragraph 133 of the Complaint.

134.   Defendants deny the allegations of Paragraph 134 of the Complaint.

Defendants further deny that McGriff is entitled to any of the relief set forth in the "wherefore" paragraph following Count X.

## Count XI

135.   Defendants incorporate their answers to Paragraphs 1-51 of the Complaint as previously set forth.

136.   Defendants deny the allegations of Paragraph 136 of the Complaint.

137.   Defendants deny the allegations of Paragraph 137 of the Complaint.

138.   Defendants deny the allegations of Paragraph 138 of the Complaint.

139.   Defendants deny the allegations of Paragraph 139 of the Complaint.

140.   Defendants deny the allegations of Paragraph 140 of the Complaint.

Defendants further deny that McGriff is entitled to any of the relief set forth in the "wherefore" paragraph following Count XI.

## Count XII

141.   Defendants incorporate their answers to Paragraphs 1-51 of the Complaint as previously set forth.

142.   Defendants deny the allegations of Paragraph 142 of the Complaint.

143.   Defendants are unaware of any concrete factual allegations in Paragraph 143 of the Complaint. Defendants further note that the Court has dismissed claims based on an alleged misappropriation of trade secrets. Defendants deny the allegations of Paragraph 143 that they have engaged in any actionable misconduct.

144.   Defendants deny the allegations of Paragraph 144 of the Complaint.

145.   Defendants deny the allegations of Paragraph 145 of the Complaint.

146.   Defendants are unaware of any concrete factual allegations in Paragraph 146 of the Complaint. Defendants further note that the Court has dismissed claims based on an alleged misappropriation of trade secrets. Defendants deny the allegations of Paragraph 146 that they have engaged in any actionable misconduct.

147.   Defendants deny the allegations of Paragraph 147 of the Complaint.

148.   Defendants admit the allegations of Paragraph 148 of the Complaint that the Parties (other than Disch who has been dismissed) are before the Court but deny that McGriff is entitled to a declaratory judgment.

149.   Defendants deny the allegations of Paragraph 149 of the Complaint.

150.   Defendants deny the allegations of Paragraph 150 of the Complaint.

151.   Defendants deny the allegations of Paragraph 151 of the Complaint.

## **Count XIII**

Defendants note that the Court has already denied McGriff's request for a temporary restraining order and preliminary injunction. (R. Doc. 67). However, to the extent McGriff seeks permanent injunctive relief after an evaluation of the merits of its claims, Defendants answer each Paragraph of Count XIII individually.

152.   Defendants deny the allegations of Paragraph 152 of the Complaint.

153.   Defendants incorporate their answers Paragraphs 1-51 of the Complaint as previously set forth.

154.   Defendants deny the allegations of Paragraph 154 of the Complaint.

155.   Defendants deny the allegations of Paragraph 155 of the Complaint.

156.   Defendants deny the allegations of Paragraph 156 of the Complaint.

157.   Defendants deny the allegations of Paragraph 157 of the Complaint.

158.   Paragraph 158 of the Complaint states a series of legal conclusions to which no answer is required. To the extent an answer is required, Defendants deny the allegations of Paragraph 158.

159.   Defendants admit the allegations of Paragraph 159 of the Complaint that E. Littlestone, D. Fields, and M. Fields executed employment agreements with McGriff, but deny the remaining allegations of Paragraph 159.

160.   Defendants deny the allegations of Paragraph 160 of the Complaint.

161.   Defendants deny the allegations of Paragraph 161 of the Complaint.

162.    Defendants deny the allegations of Paragraph 162 of the Complaint.

163.    Defendants deny the allegations of Paragraph 163 of the Complaint.

164.    Defendants deny the allegations of Paragraph 164 of the Complaint.

165.    Defendants deny the allegations of Paragraph 165 of the Complaint.

166.    Defendants deny the allegations of Paragraph 166 of the Complaint.

167.    Defendants deny the allegations of Paragraph 167 of the Complaint.

168.    Defendants deny the allegations of Paragraph 168 of the Complaint.

169.    Defendants deny the allegations of Paragraph 169 of the Complaint.

170.    Defendants deny the allegations of Paragraph 170 of the Complaint.

Defendants further deny that McGriff is entitled to any of the relief set forth in the "wherefore" paragraph following Count XIII.

Defendants further deny that McGriff is entitled to any of the relief requested in its Prayer for Relief.

Defendants also demand a trial by jury on all issues so triable.

## **AFFIRMATIVE DEFENSES**

In further defense of the claims asserted in the Complaint, Defendants assert the following affirmative defenses:

1.      McGriff fails to state a claim upon which relief may be granted as to any of the Defendants.

2.      McGriff fails to state facts sufficient to constitute a cause of action entitling McGriff to recover any damages from any of the Defendants.

3.      Defendants never used or misappropriated any confidential information belonging to McGriff.

4.      The Complaint is vague, ambiguous, and uncertain.

5.      McGriff's claims are barred, in whole or in part, by the doctrines of equitable estoppel and unclean hands.

6.      McGriff has suffered no damages as a result of any unlawful conduct of Defendants, and therefore has no claim against Defendants.

7.      McGriff's claims against Defendants are, in whole or in part, frivolous, unreasonable, and without foundation, and Defendants are therefore entitled to an award of attorneys' fees pursuant to the Defend Trade Secrets Act and the Florida Uniform Trade Secrets Act.

8.      The non-solicitation provisions of the employment agreements at issue in the Complaint are overbroad and therefore unenforceable under Florida law.

9.      The non-solicitation provisions of the employment agreements at issue in the Complaint are void because they are contrary to public policy.

10.      Defendants reserve the right to assert any and all additional affirmative defenses that may be ascertained through the course of discovery.

## COUNTERCLAIMS

Now, Defendants/Counterclaim Plaintiffs Eugene Littlestone ("E. Littlestone"), Caleb Littlestone ("C. Littlestone"), Douglas Fields ("D. Fields"), Michael Fields ("M. Fields"), and Alliant Insurance Services, Inc. ("Alliant") (collectively, "Counterclaim Plaintiffs") assert the following Counterclaims against McGriff Insurance Services, Inc. ("McGriff") pursuant to Rule 13 of the Federal Rules of Civil Procedure.

## Parties

1.      Counterclaim Plaintiff Eugene Littlestone is an individual domiciled in the State of Florida.

2.      Counterclaim Plaintiff Caleb Littlestone is an individual domiciled in the State of Florida.

3.      Counterclaim Plaintiff Douglas Fields is an individual domiciled in the State of Florida.

4.      Counterclaim Plaintiff Michael Fields is an individual domiciled in the State of Florida.

5.      Counterclaim Plaintiff Alliant Insurance Services, Inc. is a corporation organized and existing under the laws of the State of California, with its principal place of business in San Diego, California.

6.     Counterclaim Defendant McGriff Insurance Services, Inc. is a corporation organized and existing under the laws of the State of North Carolina with its principle place of business in Raleigh, North Carolina.

## Jurisdiction and Venue

7.     McGriff has consented to this Court's personal jurisdiction by filing the Complaint. Additionally, the Court may constitutionally exercise personal jurisdiction over McGriff due to its substantial contacts with Florida and the causes of action arising out of those contacts.

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between Counterclaim Plaintiffs and Counterclaim Defendants. The amount in controversy with respect to the counterclaims exceeds $75,000, as Defendants have already been damaged in an amount greater than $75,000 by the wrongful conduct of McGriff.

9.     Venue is appropriate in this Court pursuant to Rule 13 of the federal rules of Civil Procedure.

## Factual Background

### The Littlestones Leave McGriff and Join Alliant

10.     From 2009 until his ultimate resignation over 11 years later, E. Littlestone worked as an insurance agent and producer on behalf of McGriff.

11.     Over the course of his time at McGriff, E. Littlestone benefitted McGriff greatly, securing significant revenue on behalf of McGriff and helping McGriff to grow its business in the South Florida market. At all times while employed by McGriff, E. Littlestone worked in McGriff's best interest and fulfilled his obligations to McGriff.

12.     Over the course of the last few months of his employment with McGriff, E. Littlestone experienced a continued decrease in support from McGriff management, despite his contributions to the company. Repeatedly, McGriff management promised E. Littlestone that McGriff would provide more administrative support to his office, and that support never came.

13.     When E. Littlestone realized that McGriff was no longer providing him with adequate resources to support the customers he worked with, E. Littlestone decided to explore other employment opportunities.

14.     Despite the issues posed by McGriff's lack of administrative support for his business, E. Littlestone generated significant revenue for McGriff in the last two months of his employment. E. Littlestone secured insurance policy renewals for multiple McGriff customers who previously had policies with a carrier that went out of business, to the benefit of McGriff.

15.     However, E. Littlestone ultimately decided that the best career decision for himself and his family was to accept a new opportunity with Alliant.

16.     E. Littlestone's son, C. Littlestone also began working for McGriff in 2018. Unlike his father, C. Littlestone did not execute any written employment agreements while employed by McGriff.

17.     Due to McGriff's lack of administrative support for its Fort Myers office, C. Littlestone also ultimately decided to seek a new career opportunity.

18.     After being recruited by Alliant, C. Littlestone decided that the best career decision for himself and his family was to accept a new opportunity with Alliant.

19.     At the time of their resignation from McGriff, E. Littlestone and C. Littlestone returned all confidential McGriff information and other McGriff property to McGriff.

20.     At no point in time did E. Littlestone sign any agreement with McGriff purporting to restrict him from competing with McGriff after his resignation.

21.     At no point in time did C. Littlestone enter into an agreement with McGriff purporting to restrict him from competing with McGriff or from soliciting any McGriff customers.

22.     On June 2, 2021, E. Littlestone and C. Littlestone commenced employment on behalf of Alliant in Alliant's Fort Myers office.

23.     Both when they worked for McGriff and now working for Alliant, the Littlestones' business focuses on securing insurance policies for condominium homeowners' associations throughout Florida.

### The Fields Leave McGriff and Join Alliant

24.     From 2009 until his resignation over 11 years later, D. Fields worked as an insurance agent and producer on behalf of McGriff.

25.     D. Fields' son, M. Fields, joined McGriff as an insurance agent and producer in 2012.

26.     About two years before D. Fields ultimately resigned from McGriff, Gray Davis, his supervisor, informed D. Fields that McGriff had unilaterally increased the minimum generated revenue on which D. Fields was eligible to receive commissions. D. Fields informed Davis that he believed this was a violation of the employment agreement and he would seek new employment if McGriff raised the threshold again. Davis promised D. Fields there would be no additional raises of the threshold.

27.     Earlier this year, McGriff again unilaterally raised the minimum threshold for revenues on which D. Fields could qualify for commissions. D. Fields informed McGriff that he considered this move a breach of the compensation provisions of his Employment Agreement.

28.     In addition to McGriff's unilateral changes to D. Fields' compensation structure, the Fields experienced many of the same issues as E. Littlestone and C. Littlestone with regard to McGriff's lack of administrative support.

29.     McGriff promised D. Fields that it would hire additional administrative support in his office, and the support never came. McGriff then laid off the claims liaison who had been responsible for helping clients serviced by D. Fields deal with claims issues with carriers.

30.     On June 14, D. Fields and M. Fields ultimately resigned from McGriff as a result of these issues. During D. Fields' conversation with Davis regarding his resignation, Davis conceded to D. Fields that the unilateral increase in the commission threshold was contrary to what McGriff had promised D. Fields.

31.     Shortly after their resignations, D. Fields and M. Fields joined Alliant in its Boca Raton office.

32.     Even after joining Alliant, D. Fields assisted certain McGriff customers who reached out to him about continuing to do business with McGriff. D. Fields forwarded an email from a customer regarding an upcoming renewal to the appropriate McGriff employee so she could assist the customer. Despite his efforts to assist McGriff, McGriff's attorney contacted D. Fields to demand he refrain from contacting McGriff employees.

33.    To date, McGriff has not paid D. Fields his commission-based compensation for insurance premiums written from the beginning of the year until his resignation in June.

34.    Under the terms of his Employment Agreement, despite his resignation, D. Fields is entitled to commission-based compensation for the work he performed on behalf of McGriff prior to his resignation.

35.    As of the filing of this counterclaim, McGriff owes D. Fields over $50,000 in unpaid commission compensation.

36.    McGriff has likewise underpaid M. Fields for his commission-based compensation for insurance premiums written from the beginning of the year until his resignation in June.

37.    Under the terms of his Employment Agreement, despite his resignation, M. Fields is entitled to commission-based compensation for the work he performed on behalf of McGriff prior to his resignation.

38.    As of the time of the filing of this counterclaim, McGriff owes M. Fields approximately $20,000-$30,000 in unpaid commission compensation.[2]

---

[2] Because D. Fields and M. Fields no longer have access to their McGriff payroll records and information regarding the amount of business written on behalf of McGriff, these numbers are only estimates. Counterclaim Plaintiffs plan to seek detailed information regarding precise amounts owed through discovery.

39.     Upon their resignation from McGriff, D. Fields and M. Fields returned all confidential McGriff information and other McGriff property to McGriff.

40.     At no point in time did D. Fields sign any agreement with McGriff purporting to restrict him from competing with McGriff after his resignation.

41.     At no point in time did M. Fields sign any agreement with McGriff purporting to restrict him from competing with McGriff after his resignation.

### *McGriff's Files Suit with Insufficient Evidence*

42.     Shortly after the Fields and the Littlestones began working for Alliant, McGriff began sending them formal demand letters regarding the non-solicitation provisions of their respective employment agreements.

43.     Despite lacking any evidence that the Fields or the Littlestones had improperly solicited any of McGriff's customers, McGriff filed suit against the Fields, the Littlestones, and Alliant on June 23, alleging, among other claims, violation of the employment agreements and tortious interference with those agreements. Counterclaim Plaintiffs strongly deny these allegations.

44.     Shockingly, McGriff's Complaint included allegations that the Littlestones, the Fields, and Alliant had misappropriated McGriff's trade secret information. McGriff broadly alleged that all of the Counterclaim Plaintiffs had misappropriated its trade secret information without any detail as to how any trade secret information was misappropriated or by whom.

45.   The Court, finding the allegations conclusory and unsubstantiated, dismissed McGriff's claims for trade secret misappropriation on October 12.

46.   The reason McGriff could not sufficiently state a claim for trade secret misappropriation is simple – neither the Littlestones nor the Fields brought any confidential McGriff information, let alone trade secret information, with them when they left McGriff to join Alliant.

47.   As a result of these trade secret claims, the Fields, the Littlestones, and Alliant have been required to retain counsel and engage in extensive efforts to defend against the claims.

### *McGriff Engages in Deceptive Anti-Competitive Practices*

48.   Immediately upon the resignation of the Littlestones and the Fields, McGriff began engaging in deceptive practices attempting to mislead customers regarding their resignation and regarding their alleged obligations to McGriff under their respective employment agreements.

49.   After D. Fields joined Alliant, one of his former customers at McGriff located him and asked to continue doing business with D. Fields and Alliant and to cease doing business with McGriff.

50.   On or around July 13, McGriff employee William Fairnington, who submitted a declaration on behalf of McGriff in this lawsuit and had actual

knowledge that D. Fields resigned to seek other employment, called this customer and falsely stated that he believed D. Fields had retired.

51.     According to the customer, when the customer informed Fairnington that he was now doing business with Alliant, Fairnington falsely told the customer that D. Fields "likely had a non-compete" and warned the customer to "best be careful."

52.     By August, a property manager representing a number of condominium associations had notified those associations that D. Fields moved to Alliant and the associations had the option to move their business from McGriff to Alliant if they wished to continue working with D. Fields.

53.     On or around August 24, according to the property manager, McGriff employee Tom Toffoli called her to discuss the fact that some of the associations she manages had moved their policies. Toffoli falsely told the property manager that "[D. Fields] and [M. Fields] has a non compete agreement with McGriff."

54.     Additionally, after his resignation, on or around July 20, McGriff sent an automated email with "Private Client Insurance Insights from McGriff" to many of its customers and former customers advertising McGriff's services using D. Fields' name and picture, implying that he was still an employee of McGriff.

55.     On or around October 6, Fairnington falsely informed another customer that D. Fields had retired.

56.     McGriff's actions show a pattern of anti-competitive behavior designed to mislead customers, former customers, and prospective customers about the status of D. Fields' employment with McGriff, the obligations D. Fields and M. Fields may owe to McGriff, and the customers' freedom to do business with whomever they choose.

57.     McGriff's actions were not limited to customers previously serviced by the D. Fields and M. Fields that desired to move their business to Alliant. On or around July 11, McGriff employee Erin Howard falsely wrote to a customer of McGriff, "Please note that the previous team responsible for some of these accounts do have a 2 year non-compete and 2 year non-solicitation agreement with our agency," referring to the Littlestones and their team.

58.     Upon information and belief, McGriff has falsely represented to additional customers and prospective customers that E. Littlestone, C. Littlestone, D. Fields, and/or M. Fields are bound by agreements preventing them from competing with McGriff.

### Count One: Breach of Contract
### (by D. Fields against McGriff)

59.     Counterclaim Plaintiffs repeat and re-allege each of the allegations in the previous paragraphs as if fully stated here.

60.     On or around November 2, 2009, D. Fields executed an Employment Agreement with McGriff (the "D. Fields Agreement").[3]

61.     Under the terms of the D. Fields Agreement, McGriff agreed to compensate D. Fields under the terms of his "Commission Compensation Plan."

62.     McGriff further agreed "to pay to Employee periodic advances…of Employee's projected annual Commission Compensation." The rate of the periodic advances was initially set by McGriff in the D. Fields Agreement, then mutually agreed upon by D. Fields and McGriff after two years.

63.     In addition to advances based on projected annual commission compensation, McGriff agreed to "pay to Employee any Commission Compensation due Employee in excess of the sum of the Advances for that quarter" within 30 days of the end of the quarter.

64.     On or around January 10, 2018, D. Fields executed an amendment to the D. Fields Agreement. The amendment did not modify the compensation provisions outlined above with respect to the timing of D. Fields' commission compensation payments.

65.     Exhibit A to the amendment provided, "In the event of termination of Employee's employment, Employee's Commission Compensation will include

---

[3] The D. Fields Employment Agreement was attached to the Second Amended Complaint as Exhibit 4, with relevant amendments attached as Exhibit 5. (*See* R. Doc. 53-4, 53-5).

commissions and fees on accounts which were invoiced prior to the termination date…."

66.    Over the course of his last quarter of employment with McGriff, the second quarter of 2021, D. Fields generated substantial revenue on behalf of McGriff.

67.    At all times while employed by McGriff, D. Fields performed his obligations under the D. Fields agreement.

68.    D. Fields earned commission compensation under the terms of the D. Fields Agreement in excess of any advance he was paid on the projected annual commission amount for the second quarter of 2021.

69.    To date and after amicable demand, McGriff has refused to pay D. Fields his excess commission compensation for the second quarter of 2021.

70.    D. Fields estimates the outstanding amount owed to be in excess of $50,000, with a precise amount to be determined through discovery.

71.    Therefore, McGriff is liable to D. Fields for all unpaid commission payments, along with interest, fees, and any other applicable relief.

## Count Two: Breach of Contract
## (by M. Fields against McGriff)

72.    Counterclaim Plaintiffs repeat and re-allege each of the allegations in the previous paragraphs as if fully stated here.

73.     On or around May 21, 2012, M. Fields executed an Employment Agreement with McGriff (the "M. Fields Agreement").[4]

74.     Under the terms of the M. Fields Agreement, McGriff agreed to compensate M. Fields under the terms of his "Commission Compensation Plan."

75.     McGriff further agreed "to pay to Employee periodic advances...of Employee's projected annual Commission Compensation." The rate of the periodic advances was mutually agreed upon by M. Fields and McGriff.

76.     In addition to advances based on projected annual commission compensation, McGriff agreed to "pay to employee any Standard Commission Compensation due Employee in excess of the sum of the Advances for that quarter" within 30 days of the end of the quarter.

77.     On or around January 11, 2018, M. Fields executed an amendment to the M. Fields Agreement. The amendment did not modify the compensation provisions outlined above with respect to the timing of M. Fields' commission compensation payments.

78.     Exhibit A to the amendment provided, "In the event of termination of Employee's employment, Employee's Commission Compensation will include

---

[4] The M. Fields Employment Agreement was attached to the Second Amended Complaint as Exhibit 6, with relevant amendments attached as Exhibit 7. (*See* R. Doc. 53-6, 53-7).

commissions and fees on accounts which were invoiced prior to the termination date...."

79. Over the course of his last quarter of employment with McGriff, the second quarter of 2021, M. Fields generated substantial revenue on behalf of McGriff.

80. At all times while employed by McGriff, M. Fields performed his obligations under the M. Fields agreement.

81. M. Fields earned commission compensation under the terms of the M. Fields Agreement in excess of any advance he was paid on the projected annual commission amount for the second quarter of 2021.

82. On July 30, 2021, McGriff issued payment to M. Fields, payment which was, upon information and belief, for the quarterly excess of commission compensation. However, this amount was substantially less than the amount of excess commission compensation earned by M. Fields.

83. M. Fields sent text message communications to McGriff employee Eric Woodling asking for an explanation regarding the payment. Those text messages were ignored.

84. The precise amount of unpaid commission compensation owed to M. Fields will be determined through discovery.

85.     Therefore, McGriff is liable to M. Fields for all unpaid commission payments, along with interest, fees, and any other applicable relief.

### Count Three: Bad Faith Trade Secret Claim
### (by all Counterclaim Plaintiffs against McGriff)

86.     Counterclaim Plaintiffs repeat and re-allege each of the allegations in the previous paragraphs as if fully stated here.

87.     The Defend Trade Secrets Act allows for an award of attorneys' fees to the party against whom a trade secret claim was asserted "if a claim of the misappropriation is made in bad faith." 18 U.S.C. § 1836(b)(3)(D).

88.     Similarly, the Florida Uniform Trade Secrets Act provides, "If a claim of misappropriation is made in bad faith…the court may award reasonable attorneys' fees to the prevailing party." Fla. Stat. § 688.005.

89.     McGriff brought trade secret claims against all of the Counterclaim Plaintiffs in its Original Complaint, First Amended Complaint, and Second Amended Complaint.

90.     In the trade secret claims, McGriff made no allegation regarding how and by whom any of its purported trade secrets were misappropriated, instead making general unsubstantiated allegations regarding Counterclaim Plaintiffs.

91.     The Court dismissed McGriff's claims for trade secret misappropriation.

92.     McGriff has no evidence suggesting that any of the Counterclaim Plaintiffs misappropriated any of its trade secrets.

93.     Upon information and belief, McGriff brought its trade secret claims for the sole purpose of harassing and smearing Counterclaim Plaintiffs and without conducting a thorough investigation to determine whether there was any merit to those claims.

94.     McGriff knew, or was reckless in not knowing, that its claims for trade secret misappropriation had no merit.

95.     Counterclaim Plaintiffs were damaged by McGriff's bad faith trade secret claims by having to retain counsel to defend against the claims and the injunction sought by McGriff in connection with those claims.

96.     Therefore, McGriff is liable to Counterclaim Plaintiffs for their attorneys' fees and costs in defending against the trade secret claims.

## Count Four: Tortious Interference with Prospective Business Relationships (by all Counterclaim Plaintiffs against McGriff)

97.     Counterclaim Plaintiffs repeat and re-allege each of the allegations in the previous paragraphs as if fully stated here.

98.     After the individual Counterclaim Plaintiffs departed McGriff to join Alliant, many prospective customers reached out to them and/or Alliant to attempt to move their business from McGriff to Alliant.

99.     For at least some of these customers, McGriff knew that the customers were seeking to move their business to Alliant and cease doing business with McGriff.

100.    On multiple occasions, after learning that customers were attempting to transfer their business from McGriff to Alliant of their own volition, McGriff intentionally interfered with this transition by falsely representing to those customers that D. Fields, M. Fields, E. Littlestone, and/or C. Littlestone were subject to non-competition agreements.

101.    As a result of these false communications, Counterclaim Plaintiffs have lost the opportunity to do business with customers who would have otherwise chosen to move their business from McGriff to Alliant.

102.    Counterclaim Plaintiffs have been damaged in the form of lost profits as a result of McGriff's interference with these prospective relationships.

103.    Therefore, McGriff is liable to Counterclaim Plaintiffs for tortious interference with prospective business relationships.

## **Jury Demand**

104.    Counterclaim Plaintiffs demand a trial by jury for all counts so triable.

## **Relief Sought**

Counterclaim Plaintiffs request a judgment in their favor, and against McGriff, awarding damages, attorneys' fees, and all other relief to which

Counterclaim Plaintiffs are entitled in law, and equity, including but not limited to fees, costs, and penalties, whether provided by contract or statute.

Date: October 26, 2021                    Respectfully submitted,

                                          */s/ Luis E. Llamas*
                                          Luis E. Llamas.
                                          Florida Bar Number:  89822
                                          Joseph F. Lavigne (Admitted Pro Hac Vice)
                                          Louisiana Bar Number: 28119
                                          Jacob J. Pritt (Admitted Pro Hac Vice)
                                          Louisiana Bar Number: 38872
                                          Jones Walker LLP
                                          201 South Biscayne Boulevard, Suite 2600
                                          Miami, FL 33131
                                          Telephone:  305-679-5757
                                          Facsimile:  305-679-5710
                                          Email: llamas@joneswalker.com

                             **Counsel for Defendants**

                        **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 26, 2021, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to all counsel of registered in the CM/ECF system.

                                          */s/ Luis E. Llamas*
                                          Luis E. Llamas